Jordan M. Jones, Esq. SBN 344487
STINAR LANNEN, PLLC
360 E 2nd St., Suite 820
Los Angeles, CA 90012
Tel: (213) 993-0360
Email: Jordan@StinarLannenLaw.com
*Counsel for Plaintiffs*

Parker G. Stinar, Esq. (*Pro Hac Vice* forthcoming)
Patrick Lannen, Esq. (*Pro Hac Vice* forthcoming)
Symone D. Shinton, Esq. (*Pro Hac Vice* forthcoming)
STINAR LANNEN, PLLC
280 W. Maple Rd., Ste. 200
Birmingham, Michigan 48009
Phone: (213) 277-6480
Fax: (248) 565-2691
Email: Parker@StinarLannenLaw.com
Email: Symone@StinarLannenLaw.com
*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JANE C.F. DOE; JANE E.E. DOE; JOHN R.L. DOE; JANE T.H. DOE; JOHN R.H. DOE; and JOHN S.C. DOE; individuals,

PLAINTIFFS,

vs.

COUNTY OF LOS ANGELES, a public entity; DOES 1-100, individuals,

DEFENDANTS.

Case No.: 2:26-cv-10077

**COMPLAINT FOR DAMAGES**

1. **SEXUAL ASSAULT**
2. **SEXUAL BATTERY**
3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
4. **VIOLATION OF BANE ACT (CIVIL CODE 52.1)**
5. **NEGLIGENCE**
6. **NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**
7. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
8. **VIOLATION OF 42 U.S.C. § 1983 (AGAINST INDIVIDUAL DEFENDANTS)**
9. **MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (*MONELL*) (AGAINST COUNTY OF LOS ANGELES)**
10. **FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (GOV'T CODE § 845.6)**

**(AGAINST COUNTY OF LOS ANGELES AND INDIVIDUAL DEFENDANTS)**

**11. DECLARATORY RELIEF AS APPLIED (UNCONSTITUTIONALITY OF CAL. GOV. CODE § 844.6(a)(2) (Against COUNTY)**

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiffs, JANE C.F. DOE; JANE E.E. DOE; JOHN R.L. DOE; JANE T.H. DOE; JOHN R.H. DOE; and JOHN S.C. DOE (individuals) (herein after referred to as "PLAINTIFFS"); for causes of action against Defendants COUNTY OF LOS ANGELES, a public entity (hereinafter "COUNTY"); and the following individuals who were employed by the County at all relevant times: DOES 1-100, inclusive, (herein after referred to as "INDIVIDUAL DEFENDANTS" and the terms "DEFENDANTS" shall reference all Defendants, including DOES 1-100 and COUNTY, its agents and/or employees), alleges as follows:

## INTRODUCTION

1. This case arises from COUNTY's longstanding, facility-wide failure to protect vulnerable minors in its juvenile detention system from egregious patterns of foreseeable sexual misconduct and abuse by COUNTY employees acting under color of law. PLAINTIFFS were abused as incarcerated minors who were separated from their families; ideal victims and prime targets for sexual exploitation by INDIVIDUAL DEFENDANTS. PLAINTIFFS were frightened and made to believe that: 1) the abuse they were experiencing were part of their state-sanctioned criminal punishment, and 2) if they complained, their complaints would fall on "deaf ears" at best, and/or (more likely) they would be retaliated against for complaining. DEFENDANTS affirmative conduct and representations created PLAINTIFFS' reasonable belief that he could not meaningfully obtain redress for the abuse he was experiencing, and, if and when he tried to, nobody would believe him over the word of sworn peace officers subject to the power and

coercive authority granted to law enforcement officers.

2. This conduct violated PLAINTIFFS' civil liberties, state constitutional rights as well as Penal Code §§ 243.4(a) and 289.6 which makes it unlawful to engage in sexual misconduct with persons in custody. The acts were perpetrated by employees and/or agents of COUNTY'S Probation Department, while PLAINTIFFS were detained and housed at a juvenile facility owned and/or operated by COUNTY'S Probation Department.

3. The INDIVIDUAL DEFENDANTS used their positions of trust and authority to repeatedly sexually abuse minor inmates in their custody, care, control, and direction by engaging in various brutal and sexual acts ranging from threats and use of pepper spray to inappropriate touching and/or aggressive groping to oral, vaginal or anal sex, and penetration. If PLAINTIFFS and other similarly situated failed to comply with the demands of the INDIVIDUAL DEFENDANTS, they were punished by having their privileges taken away and/or physically threatened with abuse, or loss of further rights and privileges.

4. These abuses were committed to satisfy the INDIVIDUAL DEFENDANTS' own control, power, and sexual desires at the expense of defenseless minors, including PLAINTIFFS. Defendant COUNTY knew or should have known of the abuses that PLAINTIFFS endured during their confinement. Rather than taking adequate corrective and preventive actions, COUNTY ratified, tolerated, and endorsed the INDIVIDUAL DEFENDANTS' behavior through affirmative acts and omissions, including the failure to investigate complaints and red flags, failure to discipline or restrict known problem staff, failure to provide safe reporting channels, failure to summon medical or mental health care, and failure to enact or enforce policies designed to prevent staff sexual misconduct, thereby communicating to PLAINTIFFS and other similarly situated minors that such abuse, harassment, and retaliation would be accepted and concealed by COUNTY.

5. PLAINTIFFS have endured egregious violations of their rights under the Constitution (the Fourteenth Amendment), and laws of the United States, as well as those

guaranteed by the Constitution and statutes of the State of California. These infringements manifested through acts of sexual abuse and assault. PLAINTIFFS' experiences underscore a distressing neglect and systemic failure to safeguard his fundamental human rights and dignity.

**PARTIES**

6. PLAINTIFFS and those similarly situated were at all relevant times herein residents of the State of California. Due to PLAINTIFFS being a victim of childhood sexual abuse and harassment, their identities have been protected in this public filing due to the sensitive and personal nature of the allegations under *Penal Code* § 293 and the fact that they were victims of sexual assault as minors.

7. Defendant COUNTY is, and at all relevant times herein, was a government entity located in the County of Los Angeles, State of California. COUNTY was and is organized under the laws of the State of California. COUNTY was responsible for the supervising, hiring, retention, and training of INDIVIDUAL DEFENDANTS. At all relevant times, COUNTY and INDIVIDUAL DEFENDANTS had minor residents under its care, custody, and control that were confined to its premises including PLAINTIFFS.

8. One department that makes up Defendant COUNTY'S government is the Juvenile Probation Department. PLAINTIFFS are informed and therefore believe, that its main offices are located at 9150 East Imperial Highway Downey, California 90242. Defendant COUNTY'S Juvenile Department operates youth detention camps owned and/or operated by Defendant COUNTY, which exclusively housed youth in several facilities.

9. Los Padrinos Juvenile Hall (hereinafter referred to as "LPJH") is a secure facility for minors located at 7285 Quill Dr. Downey, California 90242 which is owned and operated by COUNTY.

10. Central Juvenile Hall (herein referred to as "CJH") is a secure facility for minors aged located at 1605 Eastlake Ave, Los Angeles, California 90033, which is owned and operated by COUNTY.

11. Barry J. Nidorf Juvenile Hall, otherwise known as Sylmar Juvenile Hall

("BJNJH") is a secure facility for minors located at 16350 Filbert St. Sylmar, California 91342 which is owned and operated by COUNTY.

12. INDIVIDUAL DEFENDANTS at all relevant times herein were individuals residing in the County of Los Angeles, acting under the authority and in the course and scope of their employment with Defendant COUNTY at the time the improper and unlawful conduct occurred. PLAINTIFFS were not told these officer's full names, and some were not aware if they told first or last names, or the proper spelling. The full true legal names of INDIVIDUAL DEFENDANTS are readily unavailable and unknown to PLAINTIFFS. When the true full names of INDIVIDUAL DEFENDANTS are ascertained, PLAINTIFFS will request leave of Court to amend this Complaint to state their true names herein.

13. Defendants DOES 1-20, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFFS are ignorant as to the true names and capacities of DOES 1-20. DOES 1-20 are individuals who were in a supervisory, employee, and/or agent relationship or role that controlled, operated, or supervised the youth facility located in Los angeles County, California. DOES 1-20 were responsible for the supervising, hiring, retention, and training of DOES 51-100. DOES 1-20 were employees, agents, principals, and/or contractors of COUNTY. When the true names of DOES 1-20 are ascertained, PLAINTIFFS will request leave of Court to amend this Complaint to state their true names herein.

14. Defendants DOES 21-50, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFFS are ignorant as to the true names and capacities of DOES 21-50. DOES 21-50 are individuals, corporations, and/or entities that operated, controlled, or supervised the youth facilities in Los Angeles County, California. DOES 21-50 were responsible for the hiring, retention, and training of DOES 51-100. DOES 21-50 were employees, agents, principals and/or contractors of COUNTY. When the true names of DOES 21-50 are ascertained, PLAINTIFFS will request leave of Court to amend this Complaint to state their true names herein.

15. Defendants DOES 51-100, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFFS are ignorant as to the true names of DOES 51-100 who are individuals sued by such fictitious names. DOES 51-100 were employees, agents, principals

and/or contractors of COUNTY and DOES 1-50 while working at the facility in Los angeles County, California. When the true names of DOES 51-100 are ascertained, PLAINTIFFS will request leave of Court to amend this Complaint to state their true names herein.

16. At all times mentioned herein, DOES 51-100 were adult guards, counselors, supervisors, mentors, advisors, and employees of COUNTY and DOES 1-50. DOES 51-100 acting as employees, agents, and/or servants, were under Defendant COUNTY and DOES 1-50's control and/or supervision. Upon information and belief, DOES 51-100 were employed as guards, counselors, staff members, and/or supervisors of minor residents while at COUNTY and DOES 1-50's facility. As their employees, COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFFS to be of high ethical and moral repute, and to be in good standing with COUNTY and DOES 1-50 and the public in general. In this capacity, DOES 51-100 oversaw, supervised, mentored and advised residents confined to their custody regarding personal issues, daily needs, their future, and general emotional and psychological issues. COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFFS to be highly qualified guards, counselors, supervisors, mentors, and advisors who could and would assist PLAINTIFFS with daily living needs as well as working through personal issues they faced, especially in light of the fact PLAINTIFFS were minors in custody. Inherent in this representation was the understanding that DOES 51-100 were persons of high ethical and moral standing, selected to provide supervision, leadership, guidance, mentoring, and advising to all resident inmates, including PLAINTIFFS. PLAINTIFFS reasonably assumed that DOES 51-100 were persons worthy of their trust.

17. PLAINTIFFS are informed and believe, and on that basis, allege, that at all times mentioned herein, there existed a unity of interest and ownership among DEFENDANTS, and each of them, such that any individuality and separateness between DEFENDANTS, and each of them, ceased to exist. DEFENDANTS, and each of them, were the successors-in-interest and/or alter egos of the other Defendants, and each of them in that they purchased, controlled, dominated, and operated each other without and separate identity, observation of formalities, or other manner of division.

18. PLAINTIFFS are informed and believe that and thereon allege that all DEFENDANTS including INDIVIDUAL DEFENDANTS, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint ventures, co-tortfeasors and employees of all other Defendants, and that all acts alleged occurred within the course and scope of the agency, employment, partnership, joint venture, conspiracy and/or enterprise, and their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in contradiction with the other allegations.

19. Regarding each constitutional violation and tort referenced, PLAINTIFFS allege that the COUNTY is vicariously liable for the actions of INDIVIDUAL DEFENDANTS, which actions were in the scope of employment, because imposition of vicarious liability (1) will deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) will ensure more reliable compensation for victims; and (3) will equitably distribute the loss among those who benefit from the COUNTY'S exercise of police power.

20. All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further discovery. Pursuant to *Code of Civil Procedure* section 340.1, PLAINTIFFS bring this Complaint against DEFENDANTS, and each of them, to recover damages suffered by PLAINTIFFS as a result of childhood sexual abuse and other relief available at law and in equity.

21. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331, because Plaintiff alleges violations of 42 U.S.C. § 1983 for their Eighth and Ninth Causes of Action. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFFS

23. At all times material hereto, PLAINTIFFs were minors in the direct custody, care,

supervision, and control of DEFENDANTS, inclusive, due to physical confinement at LPJH, CJH, and BJNJH.

24. PLAINTIFFS' confinement at LPJH, CJH, and BJNJH was court-ordered and mandatory, and the duration and nature of this confinement depended on compliance with the orders, demands, and directives of DEFENDANTS, and each of them.

25. At all times herein referenced, DEFENDANTS, were in the position of authority, trust, influence, and persuasion over PLAINTIFFS. INDIVIDUAL DEFENDANTS were agents and/or employees of COUNTY and DOES 1-50, who maintained a special relationship with them to assure them reasonable health, safety, and freedom from undue restraint and abuse. INDIVIDUAL DEFENDANTS' abuse of PLAINTIFFS was under the color of authority. Defendant COUNTY is liable for the acts, omissions, and conduct of its employees pursuant to *Government Code* § 815.2.

26. As set forth herein, DEFENDANTS, and each of them, have failed to uphold numerous mandatory duties imposed upon them by state and federal law, and by written policies and procedures applicable to DEFENDANTS, including but not limited to the following:

a. Duty to reasonable care to protect wards of the state from known or foreseeable dangers (*Government Code* §§ 820, 815.2);

b. Duty to use reasonable care to protect wards of the state from known or foreseeable dangers (Government Code §§ 820, 815.2);

c. Duty to refrain from taking official action that contradicts the provisions of Article 1, section 28(c) of California Constitution;

d. Duty to protect wards, and provide adequate supervision (Government Code § 815.6);

e. Duty to ensure that any direction given to wards is lawful, and that adults act fairly, responsibly and respectfully towards wards;

f. Duty to properly train guards, counselors, supervisors, security and staff members so that they are aware of their individual responsibility for creating and maintaining a safe environment;

g. Duty to supervise staff and wards and enforce rules and regulations prescribed for facilities such as COUNTY and DOES 1-50's facilities, as is reasonably necessary to maintain order, protect property, or protect the health and safety of staff and wards or to maintain proper and appropriate conditions conducive to safe living.

h. Duty to exercise careful supervision of the moral conditions at a confined resident program;

i. Duty to properly monitor wards, prevent or correct harmful situations or call for help with the situation is beyond their control;

j. Duty to ensure that personnel are actually on hand and supervising wards;

k. Duty to provide enough supervision to wards;

l. Duty to supervise diligently;

m. Duty to act promptly and diligently and not ignore or minimize problems;

n. Duty to refrain from violating PLAINTIFF'S right to protection from bodily restraint or harm, from personal insult, from defamation, and from injury to their personal relations (*Civil Code* § 43);

o. Duty to abstain from injuring the person or property of PLAINTIFF, or infringing upon any of his rights (*Civil Code* § 1708); and

p. Duty to report suspected incidents of child abuse and, more specifically, childhood sexual abuse (*Penal Code* §§ 11166, 11167);

q. DEFENDANTS and each of them had and have a duty to protect wards, including PLAINTIFF. DEFENDANTS were required, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of PLAINTIFF and others.

27. COUNTY lodged with INDIVIDUAL DEFENDANTS, the color of authority, by which they were able to influence, direct, and abuse Plaintiffs and others, and to act illegally, unreasonably, and without respect for the person and safety of Plaintiffs.

28. COUNTY and DOES 1- 50 had a duty to and failed to adequately train and

supervise all guards, advisors, counselors, mentors, security and staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate conduct by other members of the staff, specifically including DOES 51-100, with children.

29. COUNTY and DOES 1-50 had a duty to and failed to enact and enforce rules and regulations prescribed for facilities such as their school and facilities where wards of the state were confined without the ability to leave on their own free will and where it was necessary to execute reasonable control over wards to protect their health and safety.

30. COUNTY and DOES 1-50 were required to and failed to exercise careful supervision of the moral conditions at their school and facilities and provide reasonable supervision.

31. As minors in custody, the COUNTY and DOES 1-50 as the employers and supervisors of DOES 51-100, knew that they were in direct contact with young children and stood *in loco parentis* regarding PLAINTIFFS while they were confined, having been entrusted to COUNTY and DOES 1-50 for their safety, protection, and well-being, while in reality PLAINTIFFS were thrown into the den of unwanted sexual abuse.

32. PLAINTIFFS further contend that they was targeted after being isolated and controlled by means of the special relationship between guards and inmates as well as the *in loco parentis* relationship established through juvenile detention. INDIVIDUAL DEFENDANTS, through grooming and isolated confinement of PLAINTIFFS and others similarly situated, exploited their position of trust and authority resulting in the sexual abuse of minors in violation of *Penal Code* §§ 261.5, 243.4(a) and 289.6.

33. PLAINTIFFS are informed and believes and thereon allege that DEFENDANTS, its employees and/or agents knew or should have known that INDIVIDUAL DEFENDANTS had engaged in unlawful sexual abusive and harassing conduct in the past, and/or was continuing to engage in such conduct. DEFENDANTS had a duty to disclose these facts to PLAINTIFFS and others, but negligently, and/or intentionally suppressed, concealed, and/or failed to disclose this information. The duty to disclose this information arose from the special, trusting, confidential, fiduciary relationship between the DEFENDANTS and PLAINTIFFS.

34. Based upon information and belief, and alleged thereon, PLAINTIFFS contend there was no formal or informal grievance process relating to the conditions of confinement in which they could make complaints about the sexual abuse and harassment by INDIVIDUAL DEFENDANTS. Moreover, to the extent there was a process, PLAINTIFFS at all times were unaware of the formal process and DEFENDANTS failed to advise PLAINTIFFS of their right to complain about the sexual misconduct without fear and/or threat of retaliation or other forms of deterrence, despite the existence of a mandatory duty to do so. Thus, PLAINTIFFS' and others' grievances fell on deaf ears and were covered up. Further, to the extent there was a process, PLAINTIFFS at all times were coerced and threatened not to report the sexual abuse through physical and verbal acts of intimidation, actual and/or constructive retaliation and/or other forms of deterrence. Due to DEFENDANTS' failure to discharge their mandatory duties, complaints that were made were buried and/or fell on deaf ears and ignored.

35. PLAINTIFFS are informed and believe and thereon alleges that DEFENDANTS escaped liability and discipline for years based on DEFENDANTS' failure to properly and efficiently investigate the allegations of sexual abuse. Moreover, DEFENDANTS were not disciplined, including termination, due to investigators violating the statute of limitations for investigators of peace officers not taking more than a year to complete their report.

**<u>THE COUNTY'S VICARIOUS LIABILITY FOR ACTS OF ITS EMPLOYEES</u>**

36. PLAINTIFFS are informed and believe and thereon allege that at all times herein described, INDIVIDUAL DEFENDANTS, were agents, employees, and/or servants of COUNTY and acted under the color of authority where the physical and sexual abuse and misconduct took place. COUNTY is vicariously liable for torts committed by INDIVIDUAL DEFENDANTS within the scope of their employment under *Government Code* section 815.2.

37. To the extent permitted by California law, COUNTY is liable for all acts and/or omissions to act by INDIVIDUAL DEFENDANTS in the scope of employment given INDIVIDUAL DEFENDANTS, as on-duty employees committed these acts and misused their authority by sexually abusing PLAINTIFFS and others, who they had detained in LPJH, CJH, and BJNJH. (*See* generally *Mary M. v. City of Los Angeles*, (1991) 54 Cal.3rd 202; *see also John*

*D.S. Roe, et al., v. County of Sacramento*, Case No. 26cv03197-TWR-SBC)

**EQUITABLE TOLLING, ESTOPPEL, DURESS, AND DELAYED DISCOVERY**

38. PLAINTIFFS' claims are timely filed, or, alternatively, their statute of limitations is subject to tolling for two years pursuant to Code of Civil Procedure § 352.1 because his claims arose during a period of incarceration.

39. PLAINTIFFS did not have reason to know of the accrual of their claims because they did not come to realize that 1) the sexual discomfort they experienced was not a part of their state-sanctioned criminal punishment, but a crime for which they were the victim; and 2) that the COUNTY knew that its employees were sexually abusing inmates but affirmatively concealing or tolerating the known concealing of such abuse. PLAINTIFFS only realized that the trauma they have suffered as a result of what they now understand was sexual abuse was connected to DEFENDANTS and their actions within less than two years of filing this claim. They realized this when they witnessed advertisements describing hundreds if not thousands of other survivors of sexual abuse at California juvenile detention facilities who were receiving legal representation for those crimes. They witnessed those advertisements less than two years prior to filing the instant claim.

40. PLAINTIFFS had no means, method, or manner of knowing that the COUNTY and its employees to whom PLAINTIFFS attempted to report the abuse were suppressing and concealing their complaints. As children, PLAINTIFFS reasonably experienced the detention facility and its employees as a seamless extension of the criminal justice and United States legal system as a whole. PLAINTIFFS both reasonably believed and feared the authority of the individuals who exercised total control over their freedom and bodily integrity.

41. COUNTY has continued to conceal and suppress reported complaints of abuse by PLAINTIFFS and dozens of others that were confined to the COUNTY's facility, repeatedly refusing to admit to ongoing, known abuse, reports of abuse, and continuing to tell PLAINTIFFS and others before and after them that the misconduct was "routine," "normal," "this is how it is here," words to the effect that if you speak up, not only will no one believe you and you will be

retaliated against. The motivation of the COUNTY in so doing was to avoid public scrutinization, avoid potential public claims, and to maintain the ability to continue to control PLAINTIFFS and other juvenile detainees however they see fit. This caused PLAINTIFFS to believe that either 1) nothing wrong had been done to him, or 2) if something wrong had been done to them, their freedom from bodily harm would only be further invaded if they attempted to do something about it.

42. PLAINTIFFS were under 18 years of age at the time of the custodial sexual abuse and the abuse consisted of conduct proscribed by the Penal Code provisions identified in section 340.11.

43. PLAINTIFFS do not rely on equitable tolling as a catchall substitute for delayed discovery or equitable estoppel. To the extent equitable tolling applies, PLAINTIFFS allege it only where the facts show timely notice to the affected DEFENDANT, lack of prejudice in defending the claim, and good faith and reasonable conduct by the affected PLAINTIFFS in pursuing available remedies.

44. PLAINTIFFS further allege that COUNTY had timely notice of the core misconduct and the need to preserve evidence because COUNTY personnel received or observed written complaints, requests to speak with probation personnel, medical requests, HIV-testing circumstances, red flags of sexual abuse, policy-violating staff conduct, and detainee reports, but failed to investigate, preserve, report, or act on that information.

45. PLAINTIFFS allege statutory tolling under California Code of Civil Procedure section 352.1 only to the extent that statute applies to a particular claim and defendant. PLAINTIFFS do not allege that section 352.1 automatically tolls all claims against public entities or public employees, or all claims arising from conditions of confinement. Rather, PLAINTIFFS plead section 352.1 in the alternative and subject to the statute's express limitations, including the two-year cap and the statutory exclusions for certain claims requiring presentation under the Government Claims Act and certain confinement-related claims.

46. Under the discovery rule, PLAINTIFFS allege that they did not discover, and in the exercise of reasonable diligence could not have discovered earlier, all facts essential to their

claims, including the causal connection between their post-majority psychological and physical injuries and the custodial sexual abuse, the wrongful nature of DEFENDANTS' conduct, and COUNTY's institutional role in enabling, concealing, and failing to remedy the abuse.

47. Earlier discovery was not reasonably possible because, while PLAINTIFFS were children confined in a COUNTY-operated juvenile detention facility and until very recently, they lacked access to 1) the psychological tools and safety required to understand that the sexual invasion into their bodily integrity was not an extension of their criminal punishment and 2) the information necessary to connect their individual abuse to COUNTY's institutional conduct, including complaint slips, medical requests, HIV-testing records, staff assignments, supervision logs, grievance records, medical records, training materials, disciplinary records, internal reports, inspection records, and policies governing sexual abuse reporting, cross-gender searches, staff isolation of minors, and medical care. Those facts were within COUNTY's possession or control and, as alleged, were suppressed, ignored, destroyed, or withheld from PLAINTIFFS.

48. The fact that PLAINTIFFS may have known that they or she was forced to participate in a sexual act against their will does not mean that the PLAINTIFFS knew, or reasonably should have known, that 1) even as they were "criminals" subject to criminal punishment often involving physical abuse at the hands of COUNTY guards, they could still be victims of sexual abuse with legal rights, or that 2) COUNTY allegedly maintained unofficial policies, customs, or practices of deliberate indifference that were a moving force behind the abuse.

49. As to the *Monell* claim, PLAINTIFFS did not know, and could not reasonably have known, facts showing COUNTY's own alleged policy, custom, ratification, deliberate indifference, failure to train, failure to supervise, failure to investigate, failure to report, and failure to summon care until those facts were revealed through public disclosures and advertisements in approximately 2025.

50. PLAINTIFFS acknowledge that the limitations period for claims brought under 42 U.S.C. section 1983 is borrowed from California's residual personal-injury limitations period, while federal law governs accrual. PLAINTIFFS therefore plead delayed discovery and equitable

tolling or estoppel for the section 1983 claims only to the extent consistent with federal accrual principles and California tolling rules borrowed in section 1983 actions.

51. As to the *Monell* claim, the actionable facts establishing COUNTY's alleged policy, custom, and moving-force causation were concealed and unavailable to PLAINTIFFS until approximately 2025.

52. Equitable estoppel separately bars DEFENDANTS from asserting any limitations or claim-presentation defense to the extent their own acts or omissions caused PLAINTIFFS to delay filing.

53. DEFENDANTS knew or had reason to know the relevant facts of PLAINTIFFS' injuries and cause. DEFENDANTS intended or acted in a manner that caused PLAINTIFFS reasonably to believe that they had no legal rights and were not victims of sexual abuse because they were criminals; that PLAINTIFFS were ignorant of the true institutional facts and their legal significance; and that PLAINTIFFS reasonably relied to their detriment on DEFENDANTS' threats, suppression, concealment, and failure to provide safe reporting channels.

54. The conduct supporting equitable estoppel includes, but is not limited to, DEFENDANTS'

a. failure to provide a safe and functional reporting process;

b. failure to advise minor detainees of external reporting mechanisms;

c. suppression, disregard, or destruction of complaints;

d. failure to respond to medical requests;

e. failure to summon medical or mental health care;

f. concealment of staff identities;

g. failure to report suspected child abuse;

h. toleration of retaliation against minors who reported staff sexual misconduct; and

i. use of privileges, threats, isolation, physical force, and institutional control to deter disclosure.

55. As discussed below, DEFENDANTS' estoppel-inducing conduct continued after

the assaults because the same institutional control, intimidation, suppression of complaints, denial of care, and concealment of records prevented PLAINTIFFS 1) from understanding that they still had a right to their bodily integrity and freedom from sexual invasion even as juvenile criminals and 2) from learning that other minors had allegedly been abused under similar conditions and that legal remedies existed for COUNTY's alleged systemic failures.

56. PLAINTIFFS plead duress-based limitations avoidance in the alternative and only to the extent California law permits duress to support equitable relief from a limitations defense.

57. PLAINTIFFS do not rely on conclusory allegations of fear, trauma, coercion, or duress alone. Instead, as further alleged below, PLAINTIFFS allege particular facts showing that DEFENDANTS' conduct prevented timely filing, including threats that complaints would not be believed, threats of loss of privileges and extended prison time, retaliation through complaint destruction, intimidation by staff, physical punishment and punitive isolation, and the ongoing psychological effects of being sexually abused as confined children by persons exercising unfettered state authority over their daily lives.

58. The coercive effects of the abuse and institutional suppression persisted after release because PLAINTIFFS experienced severe and lasting psychological trauma, shame, fear of retaliation, distrust of authority, avoidance behaviors, intrusive thoughts, nightmares, difficulty in intimate relationships, and inability to understand that the conduct they experienced as incarcerated children constituted actionable sexual abuse rather than state-sanctioned punishment. These effects were reinforced by DEFENDANTS' threats, intimidation, failure to intervene, suppression of complaints, and concealment of institutional conditions.

59. The same conduct also tolled or excused compliance with any Government Claims Act presentation requirement to the extent such a requirement is asserted and to the extent it is not displaced by California Code of Civil Procedure sections 340.1 or 340.11 or other applicable statutory provisions.

60. The COUNTY's conduct prevented timely claim presentation by concealing the abuse, suppressing or destroying complaints, failing to advise minor detainees of safe reporting procedures, ignoring medical requests, and deterring minors from reporting through threats,

retaliation, and institutional intimidation.

61. To the extent any paragraph in this section is pleaded in the alternative, PLAINTIFFS assert each limitations-avoidance doctrine separately and do not ask the Court to merge them. Delayed discovery concerns when PLAINTIFFS discovered or reasonably should have discovered the facts essential to their claims; equitable estoppel concerns DEFENDANTS' conduct that induced delay; statutory tolling concerns express statutory tolling rules; and duress-based equitable relief concerns particularized threats, coercion, and retaliation that allegedly prevented timely filing.

62. The acts and omissions alleged herein as the basis for tolling and estoppel were committed not only by individual abusers but by COUNTY supervisors, managing agents, probation personnel, and mandated reporters whose conduct is attributable to COUNTY as a matter of law.

**LOS ANGELES COUNTY PROBATION DEPARTMENT**

**PREA COMPLIANCE: POLICIES AND PROCEDURES**

63. Congress enacted the Prison Rape Elimination Act in 2003 (PREA). The PREA acknowledges that juveniles are "incapable of giving consent because of his or her youth or his or her temporary or permanent physical incapacity."[1]

64. One purpose of PREA was to establish "national standards for the detection, prevention, reduction, and punishment" of sexual assaults occurring in prisons nationwide. In enacting PREA, Congress made the following findings:

- "Members of the public and government officials are largely unaware of the **epidemic character of prison rape and the day-to-day horror experience by victimized inmates**."
- **"The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution."**

[1] https://www.congress.gov/108/plaws/publ79/PLAW-108publ79.pdf, 42 U.S.C. 15609 §10(9)(B).

- "[E]xperts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison," and "[y]oung first-time offenders are at increased risk of sexual victimization."
- "Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults;" and
- "Inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault—if they receive treatment at all."

65. The PREA's national standards included creating a system for reporting incidents of sexual assault to ensure the confidentiality of complaints, protect them from retaliation, and assure the impartial resolution of such complaints. A system for data collection, reporting, and investigation of prison staff sexual misconduct was recommended along with specific training of correctional staff "sufficient to ensure that they understand and appreciate the significance of prison rape and the necessity of its eradication."

66. One of the several explicit purposes of the PREA was to "make the prevention of prison rape a top priority in each prison system" and "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." Operative official standards for juvenile facilities are included within 28 C.F.R. §115 (May 17, 2012).

67. As late as October 2017, Defendant COUNTY still was admittedly not in compliance with PREA.[2] The Sheriff's Custody Services Director, Karen Dalton, who was overseeing implementation of PREA compliance, stated "We're finally paying attention to this issue." She noted that "[p]eople really raised an eyebrow about" the arrest of Sheriff Deputy Giancarlo Scotti who for allegedly raping two women at a COUNTY facility the summer of 2017. He was ultimately charged with raping six women detainees at a COUNTY facility the following

---

[2] https://laist.com/news/kpcc-archive/la-sheriff-has-yet-to-fully-comply-with-federal-la

year.[3] A 138-page audit of that COUNTY facility found that it failed to meet 41 out of the 43 national PREA standards.[4] Sheriff Jim McDonell of the COUNTY noted that employees are "stretched very thinly" and the COUNTY struggled to recruit deputies.

68. Dalton "refused to predict" when the COUNTY "might be in full compliance with the law," stating "this is definitely causing a culture change in our jail system," and noting that some sheriff's staff are still not grasping "the reality of sexual assault behind bars." At this time, the COUNTY appeared to only have begun implementing procedures that created an anonymous method for inmates to report sexual assault and policies to provide training on how to properly obtain sexual assault complaints to prison staff members. PREA compliance units did not exist in the COUNTY at least as of 2018.[5]

69. Since 2008, COUNTY appears to have maintained a "Juvenile Manual" on "Child Abuse" that, to some extent, accounted for instances of child sexual abuse at the hands of staff members.[6] While it provided a means for staff members to anonymously report instances of child abuse generally, no such means is provided for the children themselves. No methods for providing a safe means to report or a means to train staff members to prevent, identify, and protect juvenile detainees from staff-inflicted sexual assault is provided.

70. The United States Department of Justice published a Special Report in March 2023 titled 'Substantiated Incidents of Sexual Victimization Reported by Juvenile Justice Authorities 2013-2018." The results were inherently limited given they included only those instances of

---

[3] https://witnessla.com/audit-says-sexual-safety-conditions-inadequate-in-la-womens-jail-where-deputy-was-accused-of-assaulting-six-inmates/

[4] https://www.latimes.com/local/lanow/la-me-lasd-prea-20180401-story.html

[5] https://witnessla.com/la-county-supervisors-address-prea-non-compliance-juvenile-justice-fees-body-cameras-and-jobs-for-the-formerly-incarcerated/

[6] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://file.lacounty.gov/SDSInter/probation/1102326_JFSB_JuvenileManual1.pdf

detainees who not only reported their sexual abuse but whose reports were then properly documented, investigated, and produced to the federal government. Counties like LA COUNTY that openly admit they failed to have a proper reporting system at this time would inherently produce incomplete and unreliable data, if any.

71. The DOJ report identified 511 perpetrators of staff-on-youth sexual victimization in juvenile justice facilities. Approximately 67% of incidents of staff-on-youth sexual victimization occurred in the detainee's cell, a common area, or a program area. The sexual abuse occurred at all times of the day and night. Only 50% of the youth who successfully reported their sexual victimization from staff members were actually provided with any counseling or mental health treatment, and only 20% were given a medical examination. The report identified a staggering 338 staff perpetrators, 51 of whom were responsible for assaulting more than one individual juvenile detainee. 90% of these staff perpetrators were full-time employees. Only 8% of these staff sexual assailants were reprimanded or disciplined.

72. Letters sent from California juvenile detainees to the American Civil Liberties Union's California offices as early as February 3, 1994 and April 23, 1999 detailed sexual humiliation rituals enforced by county staff members.[7] The first known public lawsuit alleging abusive conditions at a California juvenile detention facility was filed by the Youth Law Center in 1999.[8] The "high incidences of sexual assault in prisons" was so prevalent and well-known by 2003 that Congress explicitly declared such sexual assault to be a violation of our Constitution and began authorizing $20 million in annual tax payer dollars to combat the problem. 42 U.S.C. 15609 §10(9)(B).

73. The California Department of Corrections and Rehabilitation's website hosts a press release boasting its "sweeping reforms" supposedly made after a 2003 lawsuit alleging its

---

[7] *See* https://imprintnews.org/top-stories/the-darkest-part-of-the-tunnel/241876.
[8] *See* https://imprintnews.org/top-stories/the-darkest-part-of-the-tunnel/241876.

policies and procedures failed their statutory duties to protect juvenile offenders resulted in a 2004 consent decree.[9] Then Division of Juvenile Justice Director, Mike Minor, stated "so many significant changes were made. . . but I think the key would be the culture shift."[10]

74. As further alleged below, Defendant COUNTY has failed to implement, enforce, or otherwise adhere to the procedures necessary to protect inmates under their own guidelines and PREA national standards. This failure has allowed numerous inmates to be subjected to sexual abuse and assault by allowing unsupervised and untrained COUNTY employees to abuse PLAINTIFFS with impunity.

**IMMEDIATE MEDICAL NECESSITY**

**FOR VICTIMS OF SEXUAL ASSAULT AND SEXUAL BATTERY**

75. Victims of sexual assault and sexual battery undergo significant and multifaceted trauma necessitating immediate medical intervention. This imperative stems from the acute risks associated with physical injuries, from external bruising and lacerations to more severe internal injuries such as pelvic trauma and genital or anal injuries. Victims of sexual assault are at risk of unwarranted pregnancy, contracting sexually transmitted infections, including HIV,[11] hepatitis B, and other pathogens.[12] The standard of care in such circumstances requires timely forensic and medical evaluation, including Sexual Assault Response Team (SART) examinations, evidence preservation, pregnancy prevention measures, and prophylactic treatment protocols, all of which are time-sensitive and medically necessary.

76. The psychological trauma associated with sexual assault is profound, placing victims at immediate risk for Post-Traumatic Stress Disorder (PTSD), anxiety, depression, and other acute stress reactions. Immediate psychological evaluation and intervention are recommended to address these concerns, mitigate the onset of chronic mental health conditions,

---

[9] *See* https://www.cdcr.ca.gov/news/2016/02/25/class-action-lawsuit-against-californias-division-of-juvenile-justice-terminated-after-sweeping-reforms/

[10] *Id.*

[11] American College of Emergency Physicians, *Management of the Patient with the Complaint of Sexual Assault* (2020).

[12] World Health Organization, Clinical Management of Rape and Intimate Partner Violence Survivors (2020).

and facilitate coping strategies. Expert recommendations from psychiatry underscore the need for early psychological intervention to stabilize the victim and begin the process of psychological recovery.[13]

77. Immediate and comprehensive medical care serves a dual and indispensable function: addressing acute injuries while preventing the escalation of long-term physical and psychological harm. This includes, at a minimum, the administration of post-exposure prophylaxis (PEP) for HIV within the medically accepted window period, empiric treatment for other sexually transmitted infections, emergency contraception where appropriate, and thorough documentation of injuries for both clinical and forensic purposes. Concurrent mental health screening is equally critical, as it allows for the early identification of trauma responses and facilitates timely referral for ongoing therapeutic care. The failure to provide such care not only departs from established medical standards but foreseeably results in exacerbated injury, prolonged suffering, and significantly worsened prognoses for recovery.

78. INDIVIDUAL DOE DEFENDANTS acting under color of law and within the course and scope of their employment with the COUNTY at FACILITY, owed a non-delegable duty to protect incarcerated individuals from sexual abuse and to ensure that any victim of such abuse received immediate, adequate, and appropriate medical and psychological care. This duty is grounded not only in basic standards of decency and institutional policy, but also in well-established legal mandates, including the obligation to summon and provide necessary medical care to those in custody. DEFENDANTS willfully breached these duties. They not only perpetrated and/or permitted the very acts of sexual abuse they were charged with preventing, but further engaged in deliberate concealment—intimidating victims, suppressing reporting, and obstructing access to medical personnel. This calculated misconduct directly deprived PLAINTIFFS of urgently needed medical and psychological treatment at the most critical juncture, thereby magnifying their injuries, compounding their trauma, and causing lasting and irreparable harm.

---

[13] Bragesjö, M., Larsson, K., Nordlund, L., Anderbro, T., Andersson, E., & Möller, A. (2020). Early Psychological Intervention After Rape: A Feasibility Study. *Frontiers* in Psychology, 11.

79. The immediacy of psychological assessment following sexual assault is not merely advisable—it is clinically indispensable. The period immediately following the assault constitutes a recognized window of acute neurobiological vulnerability, during which victims frequently experience shock, dissociation, impaired cognition, and heightened fear responses. Without timely intervention by trained mental health professionals, these acute reactions can consolidate into entrenched trauma pathways, substantially increasing the likelihood of chronic conditions such as Post-Traumatic Stress Disorder (PTSD), major depressive disorder, panic disorders, and suicidal ideation. Early psychological assessment is therefore essential to stabilize the victim, evaluate risk of self-harm, initiate trauma-informed care, and implement protective interventions designed to interrupt the progression from acute stress to chronic psychiatric injury. The failure to provide such immediate assessment foreseeably and substantially increases the severity, duration, and permanence of psychological harm.

80. In custodial settings, this critical need for immediate (and consistent) psychological evaluations is foreseeably and systematically undermined by a pervasive fear of retaliation. Victims of sexual abuse are wholly dependent on correctional staff—including, in many cases, their abusers and those aligned with them—for their basic necessities, personal safety, and access to medical and mental health services. This coercive dynamic creates an environment in which reporting abuse, or even requesting psychological assistance, carries a credible and substantial risk of reprisal, including threats, intimidation, physical harm, disciplinary write-ups, loss of privileges, placement in isolation, or transfer to less favorable conditions. As a direct result, victims are effectively silenced at the very moment when psychological intervention is most critical.

81. DEFENDANTS knew, or at a minimum should have known, that such a culture of fear and retaliation operates as a powerful and foreseeable barrier to disclosure and treatment. Their duty to provide immediate psychological care necessarily included an affirmative obligation to ensure that victims could safely report abuse and access mental health services without fear of reprisal. Instead, by engaging in, condoning, or deliberately ignoring retaliatory practices—and by concealing their own misconduct—DEFENDANTS not only failed to provide the required immediate psychological assessment, but affirmatively created conditions that rendered such care inaccessible.

82. This combined failure—denying immediate psychological intervention while fostering an environment of intimidation and retaliation—operated in tandem to magnify and compound PLAINTIFFS' harm. Victims were forced to internalize and suppress their trauma and endure escalating psychological distress without support, exacerbating feelings of fear, helplessness, and shame. Clinically, this dynamic is associated with more severe PTSD symptomology, prolonged recovery, and an increased risk of self-destructive behaviors. Legally, DEFENDANTS' conduct reflects a conscious and deliberate disregard for the foreseeable consequences of their actions, as they obstructed access to critical mental health care at the precise moment it was most necessary, thereby deepening and prolonging PLAINTIFFS' injuries.

**SPECIFIC ALLEGATIONS FOR PLAINTIFFS**

83. JANE C.F. DOE:

a. In approximately 2002, PLAINTIFF was a minor female approximately fifteen-sixteen years old detained in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, LPJH. PLAINTIFF recalls that her detention occurred on the weekends (Friday to Sunday) while she attended school during the weekdays. PLAINTIFF believes her detention was approximately eighteen weekends in 2002.

b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the staff member who abused PLAINTIFF is unknown to her at this time but ascertainable through discovery.

c. Plaintiffs recalls the following about the staff member who abused her at the facility:

    i. A correctional officer known to PLAINTIFF as "Officer Sanchez" appeared to her to hold supervisory authority. He was a Mexican male, heavier set, lighter-skinned, with black hair, brown eyes, and a tattoo on his right harm that could be seen underneath a watch he wore.

PLAINTIFF recalls that this staff member was assigned to secure her cell.

1. About every weekend PLAINTIFF was detained, this staff member sexually abused her by isolating her in her cell and raping her, forcing her face into the mattress to stifle her screams. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification. PLAINTIFF recalls the abusive officer ominously telling her after each assault that he looked forward to seeing her next weekend.
2. The abusive staff member also openly punished and retaliated against PLAINTIFF, physically abusing her if she attempted to resist the sexual assaults. PLAINTIFF specifically recalls several occasions where both she and another female detainee were pepper sprayed and forced to strip naked in the dining area to be publicly humiliated and degraded as an "example" for not cooperating with instructions.
3. The abusive staff member himself directly, repeatedly threatened PLAINTIFF that if she disclosed the abuse, he would harm her family and make sure that she was incarcerated permanently and indefinitely.
4. PLAINTIFF recalls either Officer Sanchez, the abuser, or an Officer Jefferson, a by-stander, taking measure to videotape the assaults as they happened. PLAINTIFF recalls that Officer Jefferson was a very thin, Caucasian male with white-gray hair who wore glasses and was older and taller than Officer Sanchez. Officer Sanchez watched the sexual assaults from start to finish

without intervening, effectively standing guard of the door for Officer Sanchez while he inflicted the sexual abuse.

5. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to her was not a part of her state-sanctioned criminal punishment but a crime in and of itself. PLAINTIFF has feared her abuser and his power throughout her entire adult life.

6. It was not until PLAINTIFF saw advertisements on social media and television that identified there were many other children who experienced this sexual abuse at detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe her or think that what happened to her was illegal or wrong. Through learning that she was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that what she experienced was in fact illegal and that she might actually be believed.

84. JANE E.E. DOE:

a. In approximately 2001-2002, PLAINTIFF was a minor female approximately fifteen-sixteen years old in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, LPJH.

b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the staff member who abused PLAINTIFF is unknown to her at this time but ascertainable through discovery. The staff member who sexually abused PLAINTIFF did so nearly every day of the two weeks she was in solitary

confinement. The abuse occurred while she was being taken from her cell to the shower in both the shower itself and a closet space along the way.

c. Plaintiffs recalls the following about the staff member who abused her at the facility:

i. The correctional officer was Hispanic with very light skin.

1. After a brief initial grooming period, this staff member sexually abused PLAINTIFF nearly every day of two weeks raping her, forcing her to perform oral sex, and forcing her to masturbate him. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. The abusive staff member implicitly threatened PLAINTIFF that he could cause her to be detained longer and thus abused longer. He made it clear to PLAINTIFF that he knew she was actively in court for her case and only then temporarily detained. He talked about when her next court hearings were as an implicit threat that he had the power to force her to stay longer or impact the outcome of those hearings. PLAINTIFF has lived in fear of her abuser and his power through the criminal law enforcement system her entire life.

3. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to her was not a part of her state-sanctioned criminal punishment but a crime in and of itself.

4. In approximately July 2025, PLAINTIFF started her own business in mental health as a mobile crisis respondent where she serves individuals who are suffering from mental health crises. Taking on this position made her feel a duty to come

forward about what happened to her as a child and motivated her to speak to an attorney about what happened to her.

5. PLAINTIFF saw advertisements on social media at about the same time but was too scared to even click on them for what they might cause her to experience psychologically for a time. Eventually, in conjunction with her position as a leader in mental health, PLAINTIFF engaged with the social media advertisements and learned that there were many other children who experienced this sexual abuse at detention facilities in California. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe her or think that what happened to her was illegal or wrong. Through learning that she was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that what she experienced was in fact illegal and that she might actually be believed.

85. JOHN R.L. DOE:

a. In approximately 2001 and 2003, PLAINTIFF was a minor male approximately fourteen and sixteen years old in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, LPJH.

b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the staff member who abused PLAINTIFF is unknown to him at this time but ascertainable through discovery. The staff member who sexually abused PLAINTIFF did so during his detention in 2003. He did so in the following locations: entering his cell at night under the pretense of conducting a room search, in the bathroom, and outside in a "blind spot" while the remainder of the group was participating in physical education.

c. Plaintiffs recalls the following about the staff member who abused him at the facility:

i. He was a tall (over six feet), very heavy, bald, dark-skinned African-American man known to PLAINTIFF as "Mr. Black." PLAINTIFF recalls he worked the night shift.

1. At least five times a week for about the entire approximately six months of PLAINTIFF's detention, this staff member sexually abused PLAINTIFF. He anally raped PLAINTIFF, forced PLAINTIFF to perform oral sex on him, and digitally penetrated his anus. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. The abusive staff member openly targeted and isolated PLAINTIFF routinely, holding him back from going to eat or attending group activities or giving him "extra time" outside so he could sexually abuse him there. The abusive staff member also openly restricted PLAINTIFF's phone time and family visitation to restrict his ability to report what was happening to him. For example, on one occasion, PLAINTIFF recalls that his grandmother came to visit PLAINTIFF and Mr. Black refused to allow the visitation, telling his grandmother Mr. Black was in trouble and could not see any visitors as punishment.

3. The abusive staff member himself also directly, repeatedly threatened that if he reported what he was doing to anyone, he would ensure PLAINTIFF is detained longer. He revealed that he knew PLAINTIFF's address and had all of his information in the system. He also threatened to restrict PLAINTIFF's meals and visitation access.

4. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to him was not a part of his state-sanctioned criminal punishment but a crime in and of itself and to disclose the abuse to a legal team.

5. It was not until PLAINTIFF saw advertisements on social media and television that identified there were many other children who experienced this sexual abuse at detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. PLAINTIFF specifically recalls reading comments on an advertisement on Instagram and seeing that many others were going through what he was experiencing.

6. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe him or think that what happened to him was illegal or wrong. Through learning that he was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that what he experienced was in fact illegal and that he might actually be believed.

86. JANE T.H. DOE:

a. Between approximately 2014-2017, PLAINTIFF was a minor female approximately thirteen-sixteen years old in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, CJH.

b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the staff members who abused PLAINTIFF is unknown to her at this time but ascertainable through discovery.

c. PLAINTIFF recalls the following about the five staff members who abused her at the facility:

i. PLAINTIFF recalls a "Stacey Stance" who was an African-American woman who was taller and wore a short haircut with pieces of purple hair. She appeared to hold supervisory authority as PLAINTIFF witnessed her regularly giving out orders to other officers who followed them. Officer Stacey called herself an "O.G. staff" member.

1. Officer Stacey's abuse occurred the most frequently in that it "felt like a relationship." This staff member sexually abused PLAINTIFF by performing oral sex on PLAINTIFF and forcing PLAINTIFF to perform oral sex on her. The abuse occurred most frequently in a closet in the hallway where clothes were kept and also in her cell. These acts were committed in a custodial setting by a female employee of the COUNTY for the staff member's own sexual gratification.

2. The abusive staff member openly groomed and isolated PLAINTIFF. She would tell PLAINTIFF to come help her fold clothes or set out dinner and be her "helper." It was known that PLAINTIFF did not have the good behavior necessary to be granted any privileges.

3. Officer Stacey physically retaliated against PLAINTIFF on multiple occasions. PLAINTIFF was pepper sprayed at least four times. One of the worst physical beatings PLAINTIFF endured occurred within seven days of her filing the grievance against the male officer who raped her, as further described below.

4. PLAINTIFF witnessed that if staff members did not follow the commands of "O.G. staff" members like Officer Stacey,

supervisors at CJH like Mr. Friedman displaced them from the facility. For example, PLAINTIFF recalls a new staff member in 2015 named Ms. Moreno who was "by the book" and appeared to be a "good employee." PLAINTIFF witnessed Ms. Moreno report certain issues to supervisor Mr. Friedman. Soon after, an "O.G. staff" member Ms. Moreno told Mr. Friedman that the kids don't listen to Ms. Moreno and she was not a good fit for CJH. Mr. Friedman immediately reassigned Ms. Moreno. PLAINTIFF understood that, as Officer Stacey had stated, new officers were a reporting threat to "O.G. staff" members who were quickly moved out of the facility.

5. Officer Stacey also had an open romantic relationship with the male officer who sexually abused PLAINTIFF, as described further below. PLAINTIFF personally witnessed Officer Stacey and this male abuser have sex at work in the same closet where Officer Stacey sexually abused her. Officer Stacey knowingly granted that male officer access to her female detainees so he could sexually abuse them. PLAINTIFF felt she was "fed" to this male abuser by Officer Stacey.

ii. A second officer who sexually abused PLAINTIFF was an African-American woman known to PLAINTIFF as "Officer Wilson." She was short, had shoulder-length hair that she wore either blown out or in a ponytail, and a tongue piercing.

1. On about ten occasions, this staff member sexually abused PLAINTIFF in "Girls SHOE" by forcing PLAINTIFF to digitally masturbate her. These acts were committed in a custodial setting by a female employee of the COUNTY for the staff member's own sexual gratification.

2. This abuse primarily occurred in the day room after Officer Wilson removed her from her cell.

iii. The third and fourth officers sexually abused PLAINTIFF at the same time and individually, sometimes involving PLAINTIFF's cellmate as well. These officers were Officer Florence, a heavier-set Hispanic female with long, black hair who wore glasses, and Officer Martinez, a Hispanic female with streaks of sandy blonde hair who always had her nails done and was conventionally attractive.

1. On at least ten occasions, these staff members forced her to perform oral sex and digitally masturbate them. The abuse occurred both in her cell and in the library. These acts were committed in a custodial setting by female employees of the COUNTY for the staff members' own sexual gratification.

2. The abusive staff member openly groomed PLAINTIFF and her cellmate. For example, PLAINTIFF recalls that her cellmate had extensive access to use the abusive staff members' personal cell phones.

iv. The fifth sexual abuser was an African-American male. He had a stocky build, black/gray hair, and a beard. He disclosed to PLAINTIFF that he had two sons at the time. She recalls him having a name or nickname that sounded like "bullpit."

1. On at least ten occasions, this staff member sexually abused PLAINTIFF by raping her in her cell and in the same closet where Officer Stacey sexually abused her. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. It was known that male officers were not supposed to be present on the girls' side of the facility. Officer Stacey openly provided

this abusive male officer with this access. Further, PLAINTIFF recalls making so much noise attempting to resist the rapes that anyone could have heard what was happening to her.

3. In 2016, PLAINTIFF reported this male officer through a written grievance. She recalls putting his name and the date and time that he raped her in the grievance.

    a. The day after she filed the grievance, Officer Wilson came to her unit, shook her head, and said "do you really want to do this? You know how they can get."

    b. About a week after she filed the grievance, PLAINTIFF was physically beaten by several officers including Officer Johnson while returning her to her cell from medical. PLAINTIFF recalls losing control over her limbs and believing that she had been given medication without her consent that caused her to lose her ability to defend herself. PLAINTIFF recalls Officer Stacey, Officer Fransco, and Officer Karaway being involved in this beating, which ended by pepper-spraying PLAINTIFF.

    c. PLAINTIFF understood this beating as the response to her grievance. After, she felt completely helpless but to do "whatever they told me to do."

    d. About a week after PLAINTIFF filed the grievance, she was raped by the male officer again. The rapes continued. Except for this blatant retaliation, nothing was ever done in response to PLAINTIFF's grievance.

v. PLAINTIFF has lived in fear of her abusers, their power, and what she experienced at the detention facility her entire adult life. The sheer

volume and variety of sexual abuse PLAINTIFF experienced alone normalized that it must have been a condition of her confinement.

1. PLAINTIFF does not have access to stable housing, employment, or health insurance.
2. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to her was not a part of her state-sanctioned criminal punishment but a crime in and of itself.
3. It was not until PLAINTIFF saw advertisements on social media (Instagram) in 2025 that identified there were many other children who experienced this sexual abuse at detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. Even upon initially seeing these advertisements, PLAINTIFF did not believe they could be real or that lawyers were actually helping people like her. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe her or think that what happened to her was illegal or wrong. Through learning that he was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that what she experienced was in fact illegal and that she might actually be believed.

87. JOHN R.H. DOE:

a. In approximately 2004-2005, PLAINTIFF was a minor male approximately twelve-thirteen years old in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, CJH.
b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government

identities of the staff member who abused PLAINTIFF is unknown to him at this time but ascertainable through discovery.

c. Plaintiffs recalls the following about the two staff members who abused him at the facility:

i. An African-American male known to PLAINTIFF as "Mr. Smith," had black hair, a mustache, and glasses. He disclosed to PLAINTIFF that he was from Los Angeles. This guard had his own office and was very popular and well-liked by other officers.

1. At least twice a week for six months, this staff member sexually abused PLAINTIFF by isolating him and escalating from forcing him to perform and receive masturbation, forcing him to perform oral sex, and anally raping him. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. The staff member would call PLAINTIFF into his office, make him sit on his lap, and tell him that if he did not do certain sexual acts with him he would not be allowed to go home or receive meals.

3. The abusive staff member himself also directly, repeatedly threatened

ii. An older, Caucasian male guard known to PLAINTIFF as "John Smith" who wore glasses, was under six feet tall, and also had his own office. This guard had the power to control the commissary and to determine who got to play outside.

1. At least once or twice a week for several months, this staff member sexually abused PLAINTIFF by forcing him to perform masturbation, forcing him to perform oral sex, and, ultimately, raping him. The abuse occurred wherever he could get away

with it, including in his office and the janitor's room. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. The abusive staff member openly targeted and isolated PLAINTIFF. When the other children were playing outside, PLAINTIFF was being sexually assaulted the janitor's room. The guards who were supervising outside play should have noticed that he was repeatedly being kept back with Officer John Smith for prolonged periods of time. Officer John Smith would also pull PLAINTIFF away from the group saying "come here, I need you to do something for me."
3. The abusive staff member also openly punished and retaliated against PLAINTIFF by cancelling visits with family members, telling his family that PLAINTIFF was sick.
4. The abusive staff member himself also directly, repeatedly threatened PLAINTIFF that if he told his family he would never see them again and if he told anyone he would never go home.

iii. PLAINTIFF has lived his entire life in fear of the power his abusers continue to hold over him as an extension of the law enforcement system.

1. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to him was not a part of his state-sanctioned criminal punishment but a crime in and of itself and to disclose the abuse to his legal team.
2. It was not until PLAINTIFF was shown advertisements on social media (Instagram) in the last year that identified there were many other children who experienced this sexual abuse at

detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe him or think that what happened to him was illegal or wrong. Through learning that he was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that what he experienced was in fact illegal and that he might actually be believed.

88. JOHN S.C. DOE:

a. Between approximately 2001-2002, PLAINTIFF was a minor male approximately fifteen-sixteen years old in the custody of the COUNTY and confined at a juvenile detention facility operated and overseen by the COUNTY, BJNJH.

b. While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the staff member who abused PLAINTIFF is unknown to him at this time but ascertainable through discovery.

c. Plaintiffs recalls the following about the staff member who abused him at the facility:

i. Officer "Mendez" was a Hispanic male with a "weak jaw line," who was physically fit, under six feet tall and clean shaven.

1. On at least four occasions, this staff member sexually abused PLAINTIFF escalating from forced masturbation to forced oral sex to rape. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

2. The abusive staff member openly isolated PLAINTIFF. For example, when the other detainees would be sent to recreation

time, the staff member would keep PLAINTIFF behind in his cell for the entirety of recreation (over sixty minutes).

3. The abusive staff member also openly punished and retaliated against PLAINTIFF. For example, on one occasion he and Officer Moore unlocked PLAINTIFF's cell and allowed two inmates to physically beat him.

4. The abusive staff member himself also directly, repeatedly threatened him that he would never be allowed to go home if he told anyone. He stood over PLAINTIFF's shoulder when he spoke on the phone with family members. He directly threatened PLAINTIFF that if he ever tried to tell anyone, he "has people on his payroll that will hurt your family, it will be very bad for you." PLAINTIFF has lived his entire life in fear of this officer retaliating against him and his family through his law enforcement network even outside of the detention facility.

5. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to him was not a part of his state-sanctioned criminal punishment but a crime in and of itself and to disclose the abuse to their legal team.

6. It was not until PLAINTIFF saw advertisements on social media (YouTube) within the last year that identified there were many other children who experienced this sexual abuse at detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe him or think that what happened to him was illegal or wrong. Through learning that he was in fact one of hundreds if not thousands of children

who were abused at California detention facilities, PLAINTIFF understood that what he experienced was in fact illegal and that he might actually be believed.

89. The staff members used their authority, control over daily assignments, and isolation within the unit to coerce PLAINTIFF into sexual contact. The abuse occurred under the color of law, and PLAINTIFF — a child at the time—had no ability to refuse or report the abuse without fear of punishment or retaliation.

90. PLAINTIFF is informed and believes, and thereon alleges, that prior to and during the period of abuse, the COUNTY knew or should have known that these staff members posed a risk of sexual misconduct to youth in custody.

91. On information and belief, the staff members had previously exhibited red flag behaviors or generated concern among other youth or staff, including spending time alone with minors in staff-only areas, assigning unusual cleaning duties, or violating professional boundaries, for example.

92. Despite this, the COUNTY failed to take reasonable steps to investigate, monitor, supervise, or restrict the staff member's interactions with youth detainees. No safeguards were put in place to prevent these staff members from isolating minors or abusing their positions of authority.

93. The COUNTY's failure to supervise staff, enforce protective policies, and respond to early warning signs reflects a broader custom, policy, and practice of deliberate indifference to the safety and dignity of children in its juvenile detention facilities.

94. As a direct proximate result of DEFENDANTS' physical and sexual abuse and COUNTY's enablement of that abuse, PLAINTIFFS have experienced ongoing and persistent mental, emotional, and psychological problems, including, but not limited to: anxiety; depression;

feelings of helplessness; insomnia; sexual identity issues; lowered self-esteem; moodiness; difficultly with meaningfully interacting with others and in intimate relationships; loss of trust and control issues with any person in a position of authority; flashbacks, nightmares, and intrusive thoughts; stress; nervousness; fear; embarrassment; shame; and loss of enjoyment of life, among others.

95. Despite these circumstances, officers who witnessed red flag grooming and isolating behaviors failed to investigate, failed to report the incidents, failed to separate PLAINTIFFS from the staff members abusing them, and failed to summon medical or psychological care for PLAINTIFFS. Their failure to intervene despite encountering circumstances amounting to red flags of sexual abuse constitutes deliberate indifference to a known risk of constitutional harm in violation of 42 U.S.C. § 1983 and further constitutes a breach of the mandatory reporting duty imposed by California Penal Code § 11166.

96. The officers' decision to observe circumstances strongly indicative of sexual abuse and to consciously turn a blind eye without investigation, report, or protective action constitutes ratification of the male staff members' unlawful conduct within the meaning of California law. The JOHN/JANE DOE officers were COUNTY employees acting within the course and scope of their employment.

97. Such sexual conduct was done for INDIVIDUAL DEFENDANTS' own sexual gratification and perversion, and performed on and without PLAINTIFF'S consent, as PLAINTIFF was a minor, and thus was unable to give valid, legal consent to such predatory acts.

98. DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct, including preventing abuse of PLAINTIFFS by ABUSERS and DOES 51-100, avoiding placement of the INDIVIDUAL DEFENDANTS in a function or environment in which direct contact with, and complete control of, minors is an inherent part of that function or environment. Instead,

DEFENDANTS ignored and concealed the sexual abuse, and sexual harassment, of PLAINTIFFS and others. DEFENDANTS and agents and/or employees failed to properly supervise INDIVIDUAL DEFENDANTS at LPJH, CJH, and BJNJH, and other juvenile probation facilities, which led to many minors, including PLAINTIFFS, being repeatedly sexually abused, molested, and harassed.

99. DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to prevent acts of sexual conduct by INDIVIDUAL DEFENDANTS, including, but not limited to, permitting a "safe haven environment" in which INDIVIDUAL DEFENDANTS were given opportunities and locals to isolate, control, and directly contact minors for their own sexual gratification without supervision or monitoring.

100. Had DEFENDANTS and agents and/or employees properly supervised and controlled the environment, instead of ignoring and concealing the sexual abuse, molestation, and harassment, PLAINTIFFS contend that the abuse would have been avoided and/or detected thereby preventing the INDIVIDUAL DEFENDANTS from sexual assaulting minors for their own sexual gratification.

101. The improper handling of sexual abuse, molestation, and harassment as alleged was the proximate cause of PLAINTIFFS' injuries due to a systemic issue within DEFENDANTS' patterns and practices of failing to provide adequate protection to the minors in their care and mishandling abuse allegations.

102. In subjecting PLAINTIFFS to sexual abuse and harassment, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malice and/or oppression under *Civil Code* § 3294.

103. PLAINTIFFS are informed and believe and thereon alleges that specifically, the DEFENDANTS and agents and/or employees acted in concert, and under their authority as a correctional and rehabilitative residential center within the COUNTY'S juvenile justice system, with reckless disregard for the concern of the minors in its charge. DEFENDANTS and agents and/or employees acted intentionally in creating an environment that harbored molesters, placed

their vulnerable minor residents at inherent and devastating risk of harm in order to maintain a façade of normalcy and to maintain the funding of the COUNTY and DOES 1-50.

104. The safety of the children entrusted to and confined at LPJH, CJH, and BJNJH, was devastatingly compromised due to DEFENDANTS' and agents and/or employees' desire to maintain the status quo and circumvent any public scrutiny for their misconduct. These willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the DEFENDANTS and agents and/or employees, thereby entitling them to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

105. DEFENDANTS' and agents and/or employees' acts and/or omissions to acts in the commission of the sexual abuse was done by agents and/or employees who prevented and/or deterred the minor victim from coming forward through threats of intimidation and violence, and therefore COUNTY and DOES 1-50 are directly responsible for covering up the egregious abuse alleged herein.

**FIRST CAUSE OF ACTION**

**SEXUAL ASSAULT**

**(Against All Individual Defendants)**

106. PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

107. INDIVIDUAL DEFENDANTS in committing the acts herein alleged, intended to subject PLAINTIFFS to sexual abuse and molestation while PLAINTIFF and others were confined to LPJH, CJH, and BJNJH, all while they acted in the course and scope of their agency/employment.

108. In so doing, they intended to cause harmful or offensive contact with PLAINTIFFS' person, and/or intended to put PLAINTIFFS in imminent apprehension of such contact.

109. INDIVIDUAL DEFENDANTS placed PLAINTIFFS in imminent apprehension of harmful or offensive contact, and PLAINTIFFS actually and reasonably believed that INDIVIDUAL DEFENDANTS had the ability to make harmful or offensive contact with

PLAINTIFFS’ person.

110. PLAINTIFF was a minor who did not consent to INDIVIDUAL DEFENDANTS’ intended harmful or offensive contact with PLAINTIFF’S person, or to their intent to place PLAINTIFFS in imminent apprehension of such contact.

111. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated PLAINTIFFS’ rights, pursuant to *Civil Code* § 43, of protection from bodily restraint or harm, and from personal insult.

112. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated and breached their duty, pursuant to *Civil Code* § 1708, to abstain from injuring PLAINTIFFS’ person or infringing upon PLAINTIFFS’ rights.

113. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and/or severally, PLAINTIFFS sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFFS are substantial, continuing and permanent. PLAINTIFFS are entitled to damages in an amount to be determined by proof at trial.

114. INDIVIDUAL DEFENDANTS’ acts also constitute conduct intended by them to cause injury to PLAINTIFFS and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFFS are therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al. in an amount to be determined by proof at trial.

## <u>SECOND CAUSE OF ACTION</u>

**SEXUAL BATTERY (CIVIL CODE § 1708.5)**

**(Against All Individual Defendants)**

115. PLAINTIFFS re-allege and incorporate by reference herein each and every

allegation contained above and below as though fully set forth and brought in this cause of action.

116. At all times herein referenced, INDIVIDUAL DEFENDANTS were employees of the COUNTY, during which time INDIVIDUAL DEFENDANTS were acting within the scope of their agency and employment.

117. During PLAINTIFFS' confinement at LPJH, CJH, and BJNJH, INDIVIDUAL DEFENDANTS intentionally, recklessly, and wantonly did acts which were intended to, and did, result in harmful and offensive contact with intimate parts of the PLAINTIFFS' person, during PLAINTIFFS' time at LPJH, CJH, and BJNJH, while they acted in the course and scope of their agency or employment with COUNTY and DOES 1-50 in violation of *Penal Code* §§ 243.4(a) and 289.6.

118. Further, PLAINTIFFS did not consent (nor could they consent) to the harmful contact with his person.

119. As a result of INDIVIDUAL DEFENDANTS complete control over PLAINTIFFS, by color of authority, PLAINTIFFS' physical confinement and detention, the PLAINTIFFS' vulnerability, the PLAINTIFFS' mental and emotional state, and the PLAINTIFFS' young age, PLAINTIFFS did not, and could not, give meaningful consent to such acts. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFFS.

120. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and severally, PLAINTIFFS sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFFS are substantial, continuing and permanent. PLAINTIFFS are entitled to damages in an amount to be determined by proof at trial.

121. INDIVIDUAL DEFENDANTS' acts also constitute conduct intended by them to cause injury to PLAINTIFFS and despicable, malicious, and oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFFS are therefore entitled to punitive damages

against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Individual Defendants)**

122. PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

123. At the time of the incidents described above, INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFFS to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing PLAINTIFFS to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress.

124. Each of the INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFFS and responsible for maintaining a special relationship.

125. INDIVIDUAL DEFENDANTS' abuse of PLAINTIFFS was an abuse of their authority as an agent and/or employee of COUNTY and performed while in the course and scope of their employment under color of law.

126. PLAINTIFFS' trust in INDIVIDUAL DEFENDANTS for their safety and wellbeing, turned to fear and intimidation by virtue of DEFENDANTS' and agents and/or employees' wrongful conduct.

127. PLAINTIFFS contend said misconduct was authorized, ratified, adopted and/or approved of by DEFENDANTS.

128. INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFFS to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability

of causing PLAINTIFFS to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFFS.

129. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, PLAINTIFFS sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFFS are substantial, continuing and permanent. PLAINTIFFS are entitled to damages in an amount to be determined by proof at trial.

130. INDIVIDUAL DEFENDANTS' conduct described herein was intentional and malicious and done for the purpose of causing, or with substantial certainty, that such conduct would cause PLAINTIFFS to suffer humiliation, mental anguish, and emotional and physical distress.

131. INDIVIDUAL DEFENDANTS acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malicious and/or oppression under *Civil Code* section 3294 thereby entitling them to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIVIL CODE § 52.1

## (Against All Individual Defendants)

132. PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

133. PLAINTIFFS alleges that at all times mentioned herein, the conduct of DEFENDANTS and agents and/or employees constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by PLAINTIFFS of rights secured by the Constitution of law of the United States, or secured by the Constitution or laws of the State of California, including interference with their right to be secure in their person and free from unreasonable and unlawful search and seizure under the Fourth Amendment and Cal. Const.

Art. I sec. 13 as well as Cal. Civil Code § 43, and the right of protection from bodily restraint and improper touching.

134. PLAINTIFFS also contend that DEFENDANTS' and agents and/or employees' actions, as alleged herein, interfered with PLAINTIFFS' right to free speech, freedom from discrimination on the basis of race and sex, and freedom from cruel and unusual punishment as afforded by the United States and California Constitutions through violence, threats of violence, intimidation, and/or coercion.

135. DEFENDANTS' actions and willful omissions, and those of their agents and/or employees as alleged herein, interfered with and will continue to interfere with PLAINTIFFS' constitutional rights to receive an immediate response to their reports of sexual assault, molestation, and harassment by DEFENDANTS and their agents and/or employees.

136. DEFENDANTS and agents and/or employees oppressive and unlawful conduct in ignoring, concealing, threatening, intimidating, retaliating against, and ultimately suppressing PLAINTIFFS' complaints of being sexually abused further violated PLAINTIFFS' constitutional protections under protections under California and the United States.

137. DEFENDANTS and agents and/or employees, knowingly, with gross negligence, and deliberate indifference to the state Constitutional rights of citizens, maintain and permit an official policy and custom of permitting the occurrence of the types of wrongs set forth hereinabove and hereafter, including violation of PLAINTIFFS' Fourth and Fourteenth Amendments to be free from unlawful sexual abuse.

138. PLAINTIFFS contend that DEFENDANTS and agents and/or employees failed to adhere to their own policies and procedures and/or failed to have any in the first place to prevent this harm, including, but not limited to, the deliberate indifferent training of its officers and/or employees in conducting, training, monitoring and supervising unlawful violations of professional misconduct by way of color of authority such as:

1. Physical assault and abuse of inmates by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees that were subsequently poorly investigated

and/or covered up by DEFENDANTS and agents and/or employees.

2. Intentional violation of DEFENDANTS' and agents and/or employees' supervision policies and procedures by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees in order to avoid evidencing improper assault and abuse on citizens by DEFENDANTS and agents and/or employees.

3. Sexual harassment, extortion, and intimidation by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees.

4. Abuse and assault against minors, minorities, and citizens with disabilities by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees as part of an accepted practice that were subsequently poorly investigated and/or covered up by DEFENDANTS and agents and/or employees to avoid legal consequences.

5. Sexual abuse and assault against inmates in custody by officers, supervisors, and/or other higher-ranking officers with policymaking authority for DEFENDANTS and agents and/or employees as defined as cruel and unusual punishment deeply offensive to human dignity and not part of the penalty that criminal offenders pay for their offenses against society.

6. Failure to report or investigate allegations of sexual misconduct by COUNTY who was required to do so, both under its own policies and procedures, as well as under federal mandate by the Fourteenth Amendment and California law.

139. As a direct cause of DEFENDANTS and agents and/or employees' wrongful conduct intended to and actually interfered with PLAINTIFFS' Constitutional Rights to be free from (a) gender discrimination, (b) free speech, (c) cruel and unusual punishment, and (d) Due Process.

140. PLAINTIFFS' rights pursuant to California *Civil Code* § 52.1 were violated,

causing injuries and damages in an amount to be proved at the time of trial.

141. Due to the conduct of DEFENDANTS and agents and/or employees, and each of them, PLAINTIFFS have been required to incur attorneys' fees and will continue to incur attorneys' fees, and pursuant to California *Civil Code* § 52.1 are entitled to recovery of said fees.

142. In addition, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, entitling PLAINTIFFS to punitive and/or exemplary damages against only INDIVIDUAL DEFENDANTS, et al., attorneys' fees, other damages pursuant to California *Civil Code* § 52(b)(1), and temporary restraining order or a preliminary or permanent injunction ordering DEFENDANTS and agents and/or employees to refrain from conduct or activities as alleged herein, stating "VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.77 OF THE PENAL CODE," and other such relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

## (Against All Defendants)

143. PLAINTIFFS re-allege and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

144. To the extent COUNTY asserts immunity under Government Code § 844.6, PLAINTIFF alleges as follows: *First*, PLAINTIFF was a minor confined at a juvenile hall—expressly designated under Welfare and Institutions Code §§ 850–851 as a facility that "shall be a safe and supportive homelike environment" and that "shall not be deemed to be, nor treated as, a penal institution"—and the application of § 844.6's prisoner immunity to juvenile wards raises substantial questions of law that cannot be resolved at the pleading stage.

145. *Second*, even if § 844.6 applies, the Fifth Cause of Action is independently grounded in Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. The mandatory duties alleged herein—including duties under Welfare and Institutions Code §§ 209, 210, 850–852, the California Code of Regulations, Title 15, and the Child Abuse and Neglect

Reporting Act—are separate statutory bases for liability that exist independently of any vicarious-liability theory.

146. *Third*, PLAINTIFF alleges injuries caused by COUNTY's breaches of mandatory statutory duties that are independent of the sexual assaults themselves, including the loss of timely protection through failure to investigate complaints, the suppression and destruction of reports, the denial of access to medical and mental health care, the failure to establish or maintain safe reporting channels, and the prolonging and exacerbation of physical and psychological harm through institutional concealment and retaliation.

147. These independent injuries are not barred by § 844.6 because they arise from COUNTY's own breaches of mandatory duties rather than from the underlying sexual assaults.

148. *Fourth*, to the extent § 844.6 immunity is asserted to bar state-law claims arising from deliberate, systemic, and constitutionally violative conduct by a public entity against confined children, PLAINTIFF contends that such application would violate the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and PLAINTIFF reserves all rights to challenge the constitutionality of § 844.6 as applied to the facts alleged herein.

149. This cause of action is brought against COUNTY to the extent permitted by statute, including Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment, and against INDIVIDUAL DEFENDANTS pursuant to applicable employee-liability statutes.

150. PLAINTIFF does not rely on respondeat superior alone to impose public-entity liability for prisoner injuries; rather, as to COUNTY, this cause is based on mandatory statutory duties designed to protect detained minors from the precise risks alleged here.

151. DEFENDANTS owed PLAINTIFF such mandatory duties under Welfare and Institutions Code §§ 209, 210, 850–852, the California Penal Code §§ 11164–11166 (the Child Abuse and Neglect Reporting Act), and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, 1350–1354, 1361–1362, 1430–1432, 1453, and 1510.

152. These duties were specifically intended to protect detained minors from the risk of sexual abuse, neglect, retaliation, denial of reporting protections, failure to investigate, failure to separate or restrict unsafe staff, and failure to obtain care.

153. PLAINITFF further alleges that the breaches caused injuries independent of the sexual assaults themselves, including the loss of timely protection, the suppression of reports, the denial of access to medical and mental health care, and the prolonging and exacerbation of physical and psychological harm.

154. DEFENDANTS and agents and/or employees, and each of them, had a duty through their special relationship with PLAINTIFF to protect them from being sexually abused under the color of authority by COUNTY employees and/or agents in the course and scope of their agency.

155. DEFENDANTS and agents and/or employees owed PLAINTIFF a special fiduciary relationship that law enforcement and/or persons in a position of authority dealing with vulnerable minors committed to their custody owe to protect them from harm.

156. The foregoing statutory duties establish mandatory duties of care within the meaning of Government Code § 815.6 that are independent of, and pleaded in addition to, any vicarious-liability theory under Government Code § 815.2.

157. Each mandatory duty was designed to prevent the very injuries alleged here, including sexual abuse of detained minors, suppression of reports, retaliation, failure to investigate red flags, and failure to summon necessary medical and mental health care.

158. At all times prior to, during and subsequently, DEFENDANTS and agents and/or employees knew and/or should have known that INDIVIDUAL DEFENDANTS were planning, conspiring and/or committing sexual abuse on PLAINTIFF and others who had been entrusted to them and instructed to provide for their safety, care, and welfare.

159. DEFENDANTS and agents and/or employees, and each of them, further hid the conduct from PLAINTIFF, his guardians and parents, the public and other law enforcement agencies as part of a systematic scheme of fraud and concealment to prevent others from learning

the truth of the ongoing and pervasive sexual abuse occurring within the confined walls of CVJDAC with defenseless minors.

160. PLAINTIFF alleges that DEFENDANTS, including their agents and employees, breached mandatory duties to investigate and act upon all reports and indications of sexual abuse.

161. DEFENDANTS further failed to provide a safe and secure environment in which PLAINTIFF could report such abuse without threats, intimidation, violence, or retaliation—despite having a duty to protect them from harm by those charged with their care and supervision.

162. At all times relevant herein, under California Welfare and Institutions Code § 850, each county's board of supervisors had a mandatory duty to provide and maintain a "suitable house" or facility for the detention of wards and dependent children of the juvenile court. Such a facility was expressly not to be deemed or treated as a penal institution.

163. Welfare and Institutions Code § 851 further required that any juvenile hall "shall be a safe and supportive homelike environment."

164. DEFENDANTS, including their agents and employees, breached these mandatory statutory duties and at all times relevant herein failed to provide a "suitable house" and to ensure a "safe and supportive homelike environment" as required by law, instead exposing PLAINTIFF and others, and each of them, to a safe haven for sexual abuse where predators were allowed to openly prey upon defenseless children who were to have been provided with a safe environment that promoted their rehabilitation.

165. DEFENDANTS breached mandatory duties under Title 15, § 1324, which required maintaining and updating a written policy and procedures manual covering all applicable regulations, including procedures prohibiting sexual abuse and retaliation.

166. DEFENDANTS failed to implement and/or meaningfully enforce such policies, creating conditions where rampant childhood sexual abuse could occur and remain concealed.

167. DEFENDANTS violated mandatory duties under Title 15, § 1350, which required written intake and admission procedures that included screening for health, behavioral, and safety risks.

168. DEFENDANTS failed to conduct adequate intake screenings, failing to identify or address risks of sexual victimization or aggression.

169. DEFENDANTS breached mandatory duties under Title 15, § 1350, by conducting intake procedures that were themselves abusive and failed to serve their protective purpose.

170. The intake process as administered at CVJDAC was not designed or implemented to identify health, behavioral, or safety risks—including the risk of sexual victimization—but rather served as an opportunity for staff to isolate and exploit vulnerable minors entering the facility.

171. PLAINTIFF further alleges that DEFENDANTS, including their agents and employees, breached mandatory duties imposed by Welfare and Institutions Code § 209, which required annual inspections of juvenile facilities by the juvenile court and biennial inspections by the Board of Corrections.

172. DEFENDANTS failed to ensure or conduct such inspections, failed to remedy cited deficiencies, and allowed unsafe and unmonitored conditions to persist. PLAINTIFF alleges that DEFENDANTS, and each of them, violated mandatory duties under Welfare and Institutions Code § 852 by failing to ensure that juvenile halls remained under the management and control of the probation officer in compliance with state law.

173. DEFENDANTS failed to supervise staff adequately, permitted unqualified or untrained individuals to exercise control over minors, and failed to maintain necessary operational oversight.

174. PLAINITFF further alleges that DEFENDANTS violated mandatory intake procedures required by California Code of Regulations, Title 15, § 1350, by failing to conduct required health and developmental screenings, failing to provide secure property storage, and failing to offer prompt communication opportunities to family or counsel.

175. These omissions foreseeably exposed PLAINTIFF to harm, neglect, and abuse.

176. PLAINTIFF alleges that DEFENDANTS breached mandatory duties under California Code of Regulations, Title 15, § 1320, which required appointment of a qualified superintendent and properly screened, trained, and cleared staff.

177. DEFENDANTS knowingly or negligently employed staff without required background checks, medical clearances, or training in child supervision and safety, thereby creating an unreasonable risk of harm to PLAINTIFF.

178. PLAINTIFF alleges that DEFENDANTS violated mandatory duties under Welfare and Institutions Code § 210 by failing to implement and maintain operational standards consistent with those set forth by the Board of Corrections for juvenile halls.

179. DEFENDANTS failed to adhere to minimum standards for staffing, safety, programming, health care, sanitation, and capacity limits, thereby endangering the well-being of PLAINTIFF and others and exposing them to a sexual assault safe haven where predation thrived and resistance to such egregious conduct was punished and silenced.

180. DEFENDANTS further breached their statutory duties by failing to establish, implement, and enforce operational policies and procedures necessary to ensure that all mandated reporters employed in their facilities would timely report known or reasonably suspected child abuse as required by Penal Code §§ 11164–11166.

181. These omissions violated DEFENDANTS' obligations to operate juvenile detention facilities in compliance with the Child Abuse and Neglect Reporting Act and created conditions in which abuse could occur and continue without detection or intervention.

182. At all times alleged herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect."

183. DEFENDANTS and agents and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

184. By failing to report the continuing harassment and abuse, which DEFENDANTS and each of them knew or should have known, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California Penal Code § 11166, DEFENDANTS and agents and/or employees created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act, and as a result, unreasonably and wrongfully exposed PLAINTIFF and other minors to sexual harassment and abuse.

185. PLAINTIFF was a member of the class of persons for whose protection California Penal Code § 11166 was specifically adopted to protect.

186. Had DEFENDANTS and agents and/or employees adequately reported the abuse and harassment of PLAINTIFF and other minors as required by California Penal Code § 11166, further harm to PLAINTIFF and other minors would have been avoided.

187. As a direct and proximate result of DEFENDANTS' and agents and/or employees' failure to follow the mandatory reporting requirements of California Penal Code § 11166, DEFENDANTS and agents and/or employees wrongfully denied PLAINTIFF and other minors, the intervention of child protection services.

188. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the abuse and sexual harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS.

189. DEFENDANTS' breaches of these mandatory statutory duties, both individually and collectively, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6, proximately causing the injuries and damages described herein.

190. The physical, mental, and emotional damages and injuries resulting from the sexual abuse and harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS, was the type of occurrence and injuries that the Child Abuse and Neglect Reporting Act was designed to prevent.

191. As a result, DEFENDANTS and agents and/or employees failure to comply with the mandatory reporting requirements of California Penal Code § 11166 also constituted a per se breach of DEFENDANTS' and agents and/or employees' duties to PLAINTIFF.

192. DEFENDANTS individually, jointly, and/or severally, and agents and/or employees breached their duty of care to PLAINTIFF which was the direct and proximate cause of PLAINTIFF sustaining severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future.

193. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

194. DEFENDANTS and agents and/or employees' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a).

195. PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**

**(Against All Defendants)**

196. PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

197. This cause of action is brought pursuant to Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. DEFENDANTS owed PLAINTIFFS mandatory duties under Welfare and Institutions Code § 210 and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, which established requirements for the selection, background investigation, training, supervision, and retention of qualified staff in juvenile detention facilities. DEFENDANTS also had duties under the Child Abuse and Neglect Reporting Act, Penal Code §§ 11164–11166, to train staff regarding their obligations to report known or suspected abuse.

198. These duties were designed to protect detained minors from sexual abuse, retaliation, concealment, and denial of access to protection and care, and Defendants' breach of

those duties proximately caused PLAINTIFFS' injuries by enabling unsafe staff to isolate minors, discouraging staff from reporting red flags, permitting staff misconduct to remain undisciplined, and allowing the same facility-wide conditions to persist across multiple years and Plaintiffs.

199. PLAINTIFF alleges this cause of action arises from childhood sexual assault within the meaning of Code of Civil Procedure section 340.1 and is exempt from Government Claims Act presentment under Government Code section 905(m).

200. For clarity, this cause of action asserts two related but distinct theories: (a) failure to screen, hire, and retain qualified and suitable staff as required by law; and (b) failure to train and supervise staff regarding their mandatory obligations to protect and report abuse of minors.

201. PLAINTIFFS allege that at all times mentioned herein, the INDIVIDUAL DEFENDANTS were agents and employees of COUNTY and performed the acts herein while in the course and scope of their agency and employment at the time of subject sexual abuse. Moreover, PLAINTIFFS contend that said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees.

202. PLAINTIFFS also contend that COUNTY is vicariously liable for the tortious sexual acts of other DEFENDANTS and agents and/or employees, and each of them, flowing from their employment with DEFENDANTS and agents and/or employees while acting in the course and scope of their employment as it: (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

203. At all times relevant herein, DEFENDANTS, and each of them, had a mandatory duty under California Welfare and Institutions Code § 210 to operate and maintain juvenile detention facilities in accordance with minimum standards adopted by the Board of Corrections. These regulations, codified in Title 15 of the California Code of Regulations, imposed binding requirements on DEFENDANTS to ensure the safety, health, and welfare of detained minors, including specific duties to prevent, detect, respond to, and report sexual abuse.

204. DEFENDANTS, and each of them, breached mandatory duties imposed by

California Code of Regulations, Title 15, § 1320, which required the appointment of qualified staff with appropriate health clearance and background checks. DEFENDANTS failed to ensure staff were adequately screened and qualified, thereby enabling unfit individuals to supervise and abuse detained youth.

205. DEFENDANTS, and each of them, violated mandatory duties under Title 15, § 1322, which required employing only personnel meeting minimum standards set by law and the Board of Corrections, including suitability for work with minors. DEFENDANTS hired, retained, or assigned unqualified or unvetted staff who posed a foreseeable risk of sexual abuse.

206. DEFENDANTS breached mandatory duties under Title 15, § 1323, which required a written staff development and training plan providing for pre-service orientation and annual in-service training. DEFENDANTS failed to adopt, implement, or enforce such a plan, resulting in staff untrained in abuse prevention, supervision, trauma-informed care, and mandatory reporting.

207. DEFENDANTS violated mandatory duties under Title 15, § 1321, which required maintaining sufficient on-duty staff at all times to ensure youth safety, including minimum staffing ratios and continuous supervision. DEFENDANTS failed to ensure adequate staffing levels, enabling opportunities for sexual assault by staff and other residents.

208. DEFENDANTS breached mandatory duties under Title 15, § 1352, which required classifying minors based on safety factors such as age, maturity, and behavior. DEFENDANTS failed to implement or enforce classification procedures to separate vulnerable youth from aggressive or sexually predatory residents.

209. DEFENDANTS violated mandatory duties under Title 15, § 1353, which required informing youth, upon orientation, of their rights, including the facility's prohibition on sexual abuse and procedures for reporting it without retaliation. DEFENDANTS failed to adequately inform or protect PLAINTIFFS and others, depriving them of the ability to safely report abuse.

210. DEFENDANTS breached mandatory duties under Title 15, § 1354, which required separating youth when necessary to protect them from assault or intimidation. DEFENDANTS failed to separate aggressive or abusive residents and/or staff from vulnerable

youth, enabling repeated acts of childhood sexual abuse.

211. DEFENDANTS violated mandatory duties under Title 15, § 1430, which required immediate health screening upon intake to identify medical, mental, or behavioral conditions posing safety risks. DEFENDANTS failed to conduct meaningful screenings that would have revealed vulnerability to sexual victimization or prior abuse history.

212. DEFENDANTS breached mandatory duties under Title 15, § 1432, which required a comprehensive health assessment within 96 hours, including screening for recent trauma or sexual abuse. DEFENDANTS failed to identify or respond to evidence of prior and/or ongoing sexual abuse suffered by PLAINTIFFS.

213. The agents and/or employees of DEFENDANTS have a special relationship with PLAINTIFFS, which imposes upon them an affirmative duty to take reasonable steps to protect them from reasonably foreseeable risks of harm.

214. INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFFS and others as employees and/or agents of COUNTY, responsible for maintaining the special relationship with the general public, including PLAINTIFFS.

215. Title 15, §§ 1322 and 1323, required DEFENDANTS to maintain and implement a written staff development and training plan addressing all duties imposed by law, including training in the recognition, prevention, and mandatory reporting of child abuse and neglect. DEFENDANTS breached these duties by failing to train employees to understand or comply with their statutory obligations under Penal Code §§ 11164–11166, foreseeably enabling the concealment of ongoing abuse.

216. INDIVIDUAL DEFENDANTS' sexual abuse of PLAINTIFFS was an abuse of their authority as an agent and/or employee of COUNTY and DOES 1-50.

217. The agents and/or employees of DEFENDANTS failed to use reasonable care in hiring and supervising their employees and/or agents who had actual and constructive knowledge and/or notice that the manner and means of hiring, training, supervising and retaining agents and/or employees created a dangerous environment for the general public, including

PLAINTIFFS, and INDIVIDUAL DEFENDANTS' acts and propensity to commit such acts. Nonetheless, COUNTY and DOES 1-50's agents and/or employees took no remedial steps to protect the public, including PLAINTIFFS.

218. DEFENDANTS deliberately disregarded their mandatory duties under Title 15, §§ 1322 and 1323, by hiring, retaining, and deploying unqualified and untrained staff in positions of authority over children. DEFENDANTS' systemic failure to implement required staff screening and training procedures created an environment where staff were unprepared or unwilling to recognize, prevent, or report sexual abuse, thereby directly contributing to the harm suffered by PLAINTIFFS.

219. At all times relevant herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." DEFENDANTS and agents and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

220. DEFENDANTS' and agents and/or employees' mandated duties owed to PLAINTIFFS pursuant to California Penal Code §§ 11164, 11165, 11166 included contacting law enforcement, the California Department of Social Services, and/or other appropriate administrative agencies to report suspected child abuse pursuant to the Child Abuse and Neglect Reporting Act.

221. Despite receiving this notice and/or witnessing firsthand INDIVIDUAL DEFENDANTS proclivity to engage in the sexually abusive behavior against PLAINTIFFS and others at JGBYDC and CEOJDC, DEFENDANTS and/or agents and employees failed to perform their mandatory duties by failing to train the agents and/or employees of DEFENDANTS of their

mandated duty to contact law enforcement, the California Department of Social Services, or any other administrative agency as was mandated pursuant to the Child Abuse and Neglect Reporting Act.

222. The agents and/or employees of DEFENDANTS knew or should have known that employment practices which failed to screen or investigate agents and/or employees with propensity to commit sexual abuse, or improper touching would create a dangerous environment for PLAINTIFFS.

223. The agents and/or employees of COUNTY and DOES 1-50 knew or should have known about INDIVIDUAL DEFENDANTS' and DOES 51-100's sexual abuse and improper touching of persons such as PLAINTIFFS and others. Despite such knowledge, DEFENDANTS' agents and/or employees ignored and failed to investigate or remedy INDIVIDUAL DEFENDANTS' and DOES 51-100's conduct in any way, thereby placing the community at risk of harm, including PLAINTIFFS.

224. DEFENDANTS' breaches of these mandatory duties, including those imposed by Welfare and Institutions Code § 210, Title 15 of the California Code of Regulations, and Penal Code §§ 11164–11166, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6.

225. Despite such knowledge, DEFENDANTS negligently hired, retained, and supervised, and failed to properly train INDIVIDUAL DEFENDANTS and DOES 51-100, failing to exercise reasonable care in preventing foreseeable harm to PLAINTIFFS and others.

226. The agents and/or employees of COUNTY and DOES 1-50 owed PLAINTIFFS a duty to protect them from unlawful sexual abuse and touching. COUNTY and DOES 1-50's agents and/or employees knew or should have known that failure to properly supervise their personnel and investigate their conduct, would subject persons, including PLAINTIFFS, to an unreasonable risk of being unlawfully sexually abused and touched. DEFENDANTS breached their duty of care to PLAINTIFFS.

227. As a direct and proximate result of negligent hiring and/or supervision of COUNTY and DOES 1-50's agents and/or employees, PLAINTIFFS sustained severe emotional

distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFFS are substantial, continuing, and permanent. PLAINTIFFS are entitled to damages in an amount to be determined by proof at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(Against All Defendants)**

228. PLAINTIFFS re-alleges and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

229. This cause of action is brought against COUNTY to the extent permitted by Government Code § 815.6 and other applicable statutory bases for failure to discharge mandatory duties imposed by enactment, and against INDIVIDUAL DEFENDANTS pursuant to applicable employee-liability statutes.

230. The agents and/or employees of DEFENDANTS also had, with PLAINTIFF, a special relationship that imposed upon them an affirmative duty to take reasonable steps to protect PLAINTIFF from reasonably foreseeable risks of harm, including foreseeable emotional harm caused by sexual abuse, retaliation, suppression of complaints, denial of medical or mental health care, and failure to investigate known red flags.

231. This claim includes emotional injuries caused by the denial of reporting protections, the failure to summon immediate medical or mental health care, and the institutional concealment and retaliation that compounded the original assaults.

232. PLAINTIFFS alleges that at all times mentioned herein, INDIVIDUAL DEFENDANTS and DOES 51-100 were agents and/or employees of COUNTY and DOES 1-50, inclusively, and that INDIVIDUAL DEFENDANTS and DOES 51-100 performed the acts herein while in the course and scope of their agency and employment at the time of the subject incident.

233. Moreover, PLAINTIFFS contends said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees, and that liability

flows from their employment with COUNTY and DOES 1-50 while acting in the course and scope of employment as it (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

234. INDIVIDUAL DEFENDANTS and DOES 51-100 were in a position of authority, trust, influence, and persuasion over PLAINTIFFS, INDIVIDUAL DEFENDANTS and DOES 51-100 were an agent and/or employee of COUNTY and DOES 1-50, responsible for maintaining the special relationship with the community, including PLAINTIFFS.

235. INDIVIDUAL DEFENDANTS and DOES 51-100's sexual abuse of PLAINTIFFS and others was therefore also an abuse of authority as an agent and/or employee of COUNTY and DOES 1-50.

236. The agents and/or employees of DEFENDANTS breached their duty to protect its citizens, including PLAINTIFFS, from reasonably foreseeable risks of sexual abuse when it has failed to use reasonable care in hiring and/or supervising and/or training its agents and/or employees from reasonably foreseeable risks of sexual abuse and touching and detect and report reasonable suspicion of sexual abuse and improper touching.

237. DEFENDANTS and agents and/or employees knew and/or should have known that its conduct as described in this complaint was likely to cause its citizens, including PLAINTIFFS, to suffer severe emotional distress.

238. As a direct and proximate result of this negligent conduct of DEFENDANTS and agents and/or employees' and as a direct proximate result of the negligent conduct of DEFENDANTS, individually, jointly, and/or severally, PLAINTIFFS sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability in the past, present, and future. The injuries suffered by PLAINTIFFS are substantial, continuing, and permanent. Plaintiffs is entitled to damages in an amount to be determined by proof at trial.

**<u>EIGHTH CAUSE OF ACTION</u>**

**42 U.S.C. § 1983**

**(Against All Individual Defendants)**

239. PLAINTIFFS reallege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

240. At all relevant times, the INDIVIDUAL DEFENDANTS acted under color of law in their capacities as COUNTY employees at FACILITY and deprived PLAINTIFFS of rights secured by the Constitution of the United States, including the Fourteenth Amendment right to bodily integrity and to be free from unreasonable, excessive, and sexualized force while in custody.

241. The INDIVIDUAL DEFENDANTS used their authority to isolate, coerce, and sexually assault PLAINTIFFS, minor detainees, with deliberate indifference to, and/or specific intent to violate, clearly established constitutional rights.

242. As a direct and proximate result, PLAINTIFFS suffered damages as alleged herein. PLAINTIFFS seeks compensatory damages, and, against the INDIVIDUAL DEFENDANTS, punitive damages to the extent permitted by law, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

**<u>NINTH CAUSE OF ACTION</u>**

**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (Monell)**

**(Against COUNTY)**

243. PLAINTIFFS reallege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

244. The constitutional deprivations suffered by PLAINTIFFS were caused by COUNTY policies, customs, and practices exhibiting deliberate indifference to the rights of children in custody, including but not limited to: (a) failing to train, supervise, and discipline staff regarding prevention, detection, and reporting of sexual abuse; (b) permitting staff to isolate minors in staff-only areas without adequate supervision; (c) failing to investigate and address red flags and prior complaints of sexual misconduct; and (d) maintaining a culture of intimidation

and retaliation that deterred reporting by youth.

245. COUNTY had actual and constructive notice of these policies, customs, and practices, including through its final policymaking officials responsible for juvenile hall operations, its supervisors, probation personnel, mandated reporters and managing agents, as well as through COUNTY's policies and procedures, repeated and observable staff misconduct, detainee complaints and attempted complaints, medical requests, HIV testing circumstances, visible red flags of sexual abuse, staff reputations known among detainees, policy-violating searches and restraint practices observed by other employees, pervasive excessive-force practices such as "dipping," punitive solitary confinement, and the absence of safe reporting channels.

246. Despite that notice, COUNTY's final policymakers, supervisors, and managing agents failed to train, supervise, discipline, investigate, restrict, remove, or report staff misconduct and thereby made a deliberate and conscious choice to tolerate the risk that minor detainees would be sexually abused and denied care.

247. No entity is required to train employees "not to sexually abuse inmates," but COUNTY was required to train employees to recognize, detect, report, and respond to indicators of sexual abuse; to investigate complaints; to enforce cross-gender supervision policies; to maintain safe reporting channels; to provide medical care to sexual assault victims; and to refrain from retaliating against detainees who reported misconduct.

248. COUNTY's total failure to implement these safeguards—despite the availability of well-established standards including those mandated by PREA, Title 15 of the California Code of Regulations, CANRA, and COUNTY's own adopted policies—constitutes deliberate indifference, not mere negligence. COUNTY's own Policy and Procedure Manual, including its PREA Policy 902, expressly recognizes the risk of staff-on-youth sexual abuse in detention facilities and sets forth detailed protocols for prevention, detection, reporting, and response.

249. COUNTY's complete failure to implement those protocols during the entirety of PLAINTIFF's confinement at CVJDAC demonstrates that COUNTY was on notice of the risk yet deliberately chose not to act.

250. These customs and practices were sufficiently widespread, persistent, and repeated to constitute the standard operating procedure at CVJDAC. The foregoing policies, customs, and practices were the moving force behind the violations of PLAINTIFF's constitutional rights.

251. But for COUNTY's longstanding failure to train, supervise, monitor, investigate, discipline, report, provide safe reporting channels, preserve and process complaints, enforce cross-gender search and medical-care policies, restrict staff access to isolated minors, and respond to known red flags, the INDIVIDUAL DEFENDANTS would not have been able to isolate, coerce, sexually abuse, silence, retaliate against, and deny care to PLAINTIFF with impunity.

252. The repeated abuse of three minors by different COUNTY employees at the same facility over approximately a decade plausibly demonstrates a pattern of similar constitutional violations sufficient to place COUNTY on notice that its omissions were likely to result in sexual abuse and denial of care.

253. COUNTY is liable for damages under 42 U.S.C. § 1983 because its own deliberate conduct, not respondeat superior, caused PLAINTIFF's constitutional injuries. PLAINTIFF seeks compensatory damages and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## <u>TENTH CAUSE OF ACTION</u>

## FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (Gov't Code § 845.6)

## (Against COUNTY and Individual Defendants)

254. PLAINTIFFS reallege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

255. While in custody at FACILITY, the INDIVIDUAL DEFENDANTS and other COUNTY employees knew or, in the exercise of due care, had reason to know that PLAINTIFFS were in need of immediate medical and/or mental health care following the sexual assaults alleged herein, as evidenced by his acute emotional distress and trauma. Despite this knowledge, they failed to summon such immediate medical care as required by Government Code section 845.6.

256. The need care was serious, obvious, and immediate immediate—not merely routine— because the assaults involved sexual contact with minors in custody, physical restraint, forced oral copulation, potential exposure to sexually transmitted infections, physical force, and acute psychological trauma observable to COUNTY employees exercising ordinary diligence.

257. Sexual assault of a minor in custody creates an immediate and obvious medical need as a matter of both established medical standards and common sense: victims require forensic medical examination (including Sexual Assault Response Team examination and evidence preservation), screening for sexually transmitted infections, prophylactic treatment, pregnancy prevention measures (where applicable), and immediate psychological crisis intervention to prevent the consolidation of acute trauma into chronic conditions such as post-traumatic stress disorder, major depressive disorder, and suicidal ideation.

258. The immediacy of these needs is well-established in medical literature and in the standards adopted by Congress in PREA and by COUNTY in its own Policy and Procedure Manual, which requires that “prisoner victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment.”

259. The failure to provide such care following sexual assault of a minor constitutes a failure to summon “immediate medical care” within the meaning of Government Code section 845.6 because the condition requiring care is “serious and obvious” and the need for intervention is time-critical.

260. To the extent any claim-presentation requirement is asserted as to the Government Code § 845.6 claim, PLAINTIFFS allege that the failure to summon immediate medical and mental health care was directly related to, connected with, or incidental to the sexual assaults alleged because the need for care arose from the assaults, the denial of care occurred immediately after and because of the assaults, the denial of care was part of the same institutional concealment and retaliation that followed the assaults, and the requested care would have documented and exposed the sexual abuse.

261. The § 845.6 claim is not a freestanding “failure to furnish medical care” claim arising from an injury unrelated to the sexual assaults; rather, it is inextricably intertwined with

and "arising out of" the sexual assaults within the meaning of § 945.9 because the immediate medical need was created by the sexual assaults, the same COUNTY employees who committed or witnessed the assaults were the employees who failed to summon care, and the failure to summon care was itself part of COUNTY's pattern of concealing sexual abuse and retaliating against reporting.

262. The claim-presentation deadline was tolled and DEFENDANTS are estopped from relying on that deadline because COUNTY employees, supervisors, probation personnel, and mandated reporters ignored written complaints and medical requests, destroyed or suppressed reports, concealed the abuse, failed to advise PLAINTIFFS of safe reporting procedures, threatened or tolerated retaliation against minors who attempted to report abuse or obtain care, and thereby prevented PLAINTIFF from discovering and presenting any claim based on the denial of immediate care.

263. PLAINTIFFS further allege that the extended statute of limitations under Code of Civil Procedure § 340.1 applies to the § 845.6 claim because the failure to summon medical care following sexual assault of a minor is itself an injury "resulting from" childhood sexual assault within the meaning of that statute, and because the denial of care was not an independent tort but rather a component of the same continuous course of wrongful conduct that included the sexual assaults, the concealment, the retaliation, and the suppression of complaints.

264. As a direct and proximate result of the failure to summon immediate medical care, PLAINTIFFS suffered additional and exacerbated injury and damages according to proof.

**ELEVENTH CAUSE OF ACTION**

**DECLARATORY RELIEF AS APPLIED**

**UNCONSTITUTIONALITY OF CAL. GOV CODE § 844.6(a)(2)**

**(Against COUNTY)**

265. PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

266. This cause of action is brought pursuant to Code of Civil Procedure § 1060, which provides that any person who desires a declaration of his or her rights or duties with respect to

another may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his or her rights and duties, including a determination of any question of validity arising under a statute. *See Lane v. City of Redondo Beach*, 49 Cal.App.3d 251, 255 (Ct. App. 1975) (explaining "[d]eclaratory relief is a proper remedy to determine the constitutionality of a statute").

267. An actual controversy exists between PLAINTIFFS and COUNTY regarding the constitutionality of Government Code § 844.6(a)(2) as applied to PLAINTIFFS under the circumstances alleged in this Complaint.

268. Specifically, the controversy concerns whether Government Code § 844.6(a)(2) may constitutionally be applied to immunize COUNTY from liability for the injuries sustained by PLAINTIFFS—a minor confined at a juvenile detention facility who was sexually assaulted by a COUNTY employee acting within the course and scope of their employment—where COUNTY systematically failed to prevent, detect, or remedy such sexual assaults despite actual and constructive knowledge of a pervasive pattern of staff sexual misconduct at its facility.

269. Government Code § 844.6(a)(2) provides that a public entity is not liable for "an injury to any prisoner."

270. While the facial validity of this provision has been sustained against prior constitutional challenge under rational basis review, no California court has adjudicated the constitutionality of § 844.6(a)(2) as applied to the specific circumstances alleged herein—namely, the systematic sexual assault of juvenile wards confined at a county juvenile detention facility by COUNTY employees, where the COUNTY's immunity operates to insulate COUNTY from any accountability for its own conscious failure to protect a class of detained minors from a category of harm to which they are uniquely vulnerable by reason of their youth, confinement, and dependence on the state.

271. As applied to PLAINTIFFS, Government Code § 844.6(a)(2) violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution.

272. The application of § 844.6(a)(2) to bar PLAINTIFFS's claims does not merely

classify PLAINTIFFS as a "prisoner" for purposes of governmental immunity; rather, as applied to the facts alleged herein, it creates and enforces a classification that immunizes COUNTY from liability for injuries inflicted upon juvenile wards precisely because of their status as confined minors—sexually assaulted by COUNTY employees—while shielding COUNTY from accountability for its systematic failure to protect this vulnerable class from harm.

273. Under the California Constitution, classifications based on sex are suspect and juveniles are afforded heightened protections.

274. PLAINTIFFS were minors who were sexually assaulted by adult COUNTY employees wielding unfettered custodial authority over them.

275. The application of § 844.6(a)(2) to immunize COUNTY from all liability for injuries caused by the sexual assault of detained children by its own employees cannot survive heightened constitutional scrutiny or even rational basis review.

276. Under heightened scrutiny, COUNTY cannot demonstrate that the application of § 844.6(a)(2) immunity to bar PLAINTIFFS' claims serves a compelling or important governmental interest, or that such application is necessary or substantially related to further any such interest.

277. The stated purposes of § 844.6—limiting the cost of law enforcement and avoiding difficulties of orderly prison administration—cannot satisfy heightened scrutiny when the immunity is invoked to shield COUNTY from liability for the systematic sexual assault of juvenile wards by COUNTY employees, a harm that the Legislature itself has declared categorically unlawful and impermissible through Penal Code § 289.6, Welfare and Institutions Code §§ 209, 210, and 850–852, the Child Abuse and Neglect Reporting Act, and the 2003 PREA.

278. The application of § 844.6(a)(2) to PLAINTIFFS further violates the due process guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution.

279. As alleged herein, PLAINTIFFS was confined at COUNTY juvenile detention centers under mandatory court orders and were wholly dependent upon COUNTY for their safety, health, and physical security.

280. COUNTY assumed an affirmative custodial obligation to protect PLAINTIFFS from foreseeable harm.

281. The application of absolute immunity to shield COUNTY from any liability for the systematic sexual violation of children in its mandatory custody, by its own employees acting within the course and scope of their employment, shocks the conscience and deprives PLAINTIFFS of any meaningful remedy against the entity that created, maintained, and controlled the conditions enabling their abuse.

282. Government Code § 815 provides that public entities are generally not liable for injuries except as provided by statute, but its Legislative Committee Comments specifically preserve "such liability as may be required by the state or federal constitution." *See Towery v. State of California*, 14 Cal.App.5th 226, 233 (2017) (explaining that "in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable").

283. Where, as here, the California and United States Constitutions mandate equal protection of the laws and prohibit arbitrary deprivation of fundamental rights, the application of § 844.6(a)(2) to bar PLAINTIFFS's claims against COUNTY cannot stand, because the Constitution itself requires that the immunity yield to the constitutional mandate.

284. PLAINTIFFS contend that Government Code § 844.6(a)(2) is unconstitutional as applied to juvenile wards who have been sexually assaulted by COUNTY employees acting within the course and scope of their employment, under circumstances where COUNTY had actual or constructive knowledge of a pattern and practice of such sexual assaults and failed to take reasonable steps to prevent, detect, or remedy the same.

285. COUNTY contends, or is expected to contend, that Government Code § 844.6(a)(2) provides it with absolute immunity from PLAINTIFFS's claims.

286. A judicial declaration is necessary and appropriate at this time to determine the respective rights and duties of the parties with respect to the application of Government Code § 844.6(a)(2) to the circumstances alleged herein.

287. Without such a declaration, PLAINTIFFS will be unable to obtain a definitive

determination of whether the immunity provision may lawfully be applied to bar their claims and will remain uncertain of their legal rights and remedies against COUNTY.

288. The declaration sought is not merely advisory; it will resolve an actual, present controversy between parties with adverse legal interests.

**PRAYER FOR DECLARATORY RELIEF**

A. WHEREFORE, PLAINTIFF prays for judgment as follows: For a judicial declaration, pursuant to Code of Civil Procedure § 1060, that Government Code § 844.6(a)(2) is unconstitutional as applied to juvenile wards who have been sexually assaulted by employees of COUNTY acting within the course and scope of their employment, under circumstances where COUNTY had actual or constructive knowledge of a pattern and practice of such sexual assaults and systematically failed to prevent, detect, or remedy the same;

B. For a judicial declaration that the application of Government Code § 844.6(a)(2) to immunize COUNTY from liability under such circumstances violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution;

C. For a judicial declaration that the application of Government Code § 844.6(a)(2) under such circumstances violates the due process guarantee of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, subdivision (a), of the California Constitution;

D. For costs of suit; and

E. For such other and further relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

FOR ALL CAUSES OF ACTION

A. For past, present, and future general damages in an amount to be determined at trial;

B. For special damages, including past and future hospital, medical, professional, and

incidental expenses in excess of the jurisdictional minimum of this Court according to proof;

C. For costs of suit herein;

D. For exemplary damages against only INDIVIDUAL DEFENDANTS, et al.

E. For civil penalties pursuant to Civil Code section 52(b)(2)

F. For attorney's fees pursuant to Civil Code section 52.1

G. For such other and further relief as the Court may deem just and proper.

Date: September 8, 2026

STINAR LANNEN, PLLC

By:________________________________
JORDAN M. JONES, Esq.
*Counsel for Plaintiffs*

PARKER STINAR, Esq.
PATRICK LANNEN, Esq.
SYMONE SHINTON, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this action be determined by trial by jury.

Date: September 8, 2026

STINAR LANNEN, PLLC

By:______________________________
JORDAN M. JONES, Esq.
*Counsel for Plaintiffs*

PARKER STINAR, Esq.
PATRICK LANNEN, Esq.
SYMONE SHINTON, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiffs*